CHEMICAL CO. v. McNAIR.

(Filed October 17, 1905).

*Contracts—Lien Bonds—Assignment of—Consideration—Notice of Assignment—Following a Fund—Drafts—Trustee.*

1. A contract by the defendant to deliver to the plaintiff lien bonds for an amount sufficient to secure the payment of his notes, vests in the plaintiff, as against the defendant, title to five lien bonds actually delivered in pursuant of said contract, though no specific bonds were mentioned and two of those delivered had not been executed at the date of the contract.

2. By the assignment of a lien bond, the assignee acquires right and title to the account for securing the payment of which the bond was given.

3. Indulgence, or extension of time for payment of a debt, constitutes a valuable consideration.

4. Notice to the debtor of the assignment of a non-negotiable instrument is necessary to protect the assignee from the effect of a payment to the original creditor, but such notice is not necessary to the validity of the assignment as between the assignor and assignee.

5. A contract to assign as collateral security "all accounts whatever owing to me as evidenced by my book of accounts," with an agreement "to furnish a full and complete list of said accounts," does not pass accounts not on the list furnished.

6. Where the defendants are fixed with the receipt of the identical money paid on accounts secured by lien bonds which had been assigned to the plaintiff, the plaintiff can recover the amounts thus coming into the defendants' possession.

7. The acceptance of a draft from a debtor does not merge the debt, or operate as a payment unless expressly so understood and agreed.

8. Where C agreed to sell the guano of O and to deliver to O notes of the planters to whom he sold, to be held by O as collateral security, and that all proceeds of guano sold were to be held by C in trust for the payment of his notes, O is entitled to the proceeds of the notes paid to the defendants as against the plaintiff to whom the lien bonds securing said notes were assigned, though the plaintiff had no notice of O's claim.

ACTION by the Virginia-Carolina Chemical Company against John F. McNair and others, heard by *Judge O. H. Allen,* upon the report of the referee, at the May Term, 1905, of the Superior Court of NEW HANOVER County.

C. H. Coble, being indebted to the plaintiff and desiring to obtain an extension of the time of payment, on January 26, 1898, executed his notes to be due on the first day of October and November, 1898, and at the same time, in consideration of the extension given, contracted to deliver to the plaintiff within fifteen days, lien bonds from his customers for an amount sufficient to secure the payment of his notes. No specific bonds were mentioned, and at that time two of those afterwards sent had not been executed. This paper was never registered. On January 30, 1898, the said Coble executed to McNair and Pearsall a contract, reciting an indebtedness evidenced by his promissory note bearing even date therewith of $4,952.25, due on the first day of October, 1898, to secure the payment of which he bargained, sold and assigned to said defendants "all accounts whatever owing to me as evidenced by my book of accounts, or any memoranda whatever kept by me at my store in the town of Laurinburg * * * I also contract to furnish said McNair and Pear-

sall a full and complete list of said accounts and notes." On the same day the said Coble executed to said defendants a mortgage. on his stock of goods and a lien upon his crops; also delivered to McNair and Pearsall a list of his accounts, etc., other than the five lien bonds which are the subject of this controversy. The said contract was registered October 3, 1898.

C. H. Coble sold, in 1898, fertilizers as agent for G. Ober & Sons' Co., to the persons executing the lien bonds delivered to the plaintiff, and collected on account thereof, the sum of $231. Coble collected from the persons executing the five lien bonds delivered to the plaintiff company, and on account thereof, including the amount collected for the guano prior to October 1, 1898, $257.75, which he turned over to the defendants and subsequently thereto the said defendants collected from said persons and on account thereof, $556.99. That plaintiff had no notice of the claim of G. Ober & Sons' Co., or any other person. C. H. Coble died since the beginning of this action, and his administrator was made party defendant. The debts due the plaintiff and G. Ober & Sons' Co. are unpaid, and there is a balance due the defendants from said Coble. The plaintiff demanded of the defendants payment of the amounts received by them, which was refused. "In October, 1898, the plaintiff, by its authorized agent, A. H. Adams, obtained from Coble an accepted draft on McNair and Pearsall for $257.75, the amount collected by them, which draft recited that it was to be paid by McNair and Pearsall, out of such excess as might remain in their hands after the debt to themselves had been satisfied—but the agent Adams, after offering to return the draft and being refused, tore up the draft." This action is prosecuted by the plaintiff against McNair and Pearsall and the administrator of Coble, for the purpose of establishing its debt against the estate of Coble, and recovering from the other defendants the amount collected by them on account of the lien bonds.

Pending the suit, G. Ober & Sons' Co. intervened and were duly made parties for the purpose of asserting their claim to the $231 collected by defendants. The cause was referred to Hon. Alfred M. Waddell, who made his report, to which the plaintiff filed exceptions. The cause was heard by His Honor, *O. H. Allen,* when the exceptions were sustained and the report modified in respect to the facts and conclusions of law.

Judgment being rendered for the plaintiff, the defendants, McNair and Pearsall, and the intervenors, G. Ober & Sons' Co., excepted and appealed.

*Rountree & Carr* and *M. L. John* for the plaintiff.
*E. K. Bryan* for the defendants and the intervenors.

CONNOR, J., after stating the facts: The record contains quite a number of assignments of error pointing to the conclusions of fact found by the judge; defendant contending that there is no evidence to sustain such conclusions. We have examined the evidence and, in our opinion, the exceptions in this respect cannot be sustained. In regard to the conclusion reached by His Honor that the five lien bonds in controversy were not included in the list furnished by Coble to defendants, the burden of proof was upon them; it is therefore not open to them to raise the question that there was no evidence in regard thereto. If the plaintiff acquired the title to the bonds as against Coble by the contract of January 26, 1898, and the subsequent delivery, the defendants could invalidate the right to them only by showing a superior title in themselves. The first step in making good this claim, was to show that they had been assigned to them. The failure to do so changed the basis of the contest, and left open to the defendants the right to attack the plaintiff's title by showing such infirmity as to invalidate it without regard to any claim of their own. To do this they make certain well defined con-

tentions which we will discuss in the order presented by the brief of their counsel. It is first said that nothing passed by the contract of January 26, 1898, because no specific lien bonds were mentioned; that two of those afterwards delivered had not at that time been executed. However this may be, the conclusion of fact found by the judge, that the five bonds described in the complaint, were sometime during the month of February, 1898, delivered to the plaintiff in pursuance of the contract of January 26, 1898, removes or cures any defect in the plaintiff's title by reason of the failure to name or specify the bonds in the contract. The defendants rely upon *Blakeley v. Patrick,* 67 N. C., 40, wherein it is held that the description in a mortgage of "ten new buggies," the mortgagor having a larger number of new buggies on hand, was too indefinite, and the mortgagee acquired no title to any buggies. It is clear that, if before the right of third parties attached, the mortgagor had set apart ten new buggies and delivered them into the possession of the mortgagor in pursuance of the mortgage, he could have retained them. It may be that his right could have been sustained, either as curing a defect in the writing, by rendering certain that which was uncertain, or by treating the delivery as a pledge, resorting to the mortgage to fix the terms and purpose for which it was made. In our case we do not think that the plaintiff acquired even, as against Coble, any right to demand specific performance, by compelling the delivery of any specific lien bonds, but where the five bonds were, as found by His Honor, in pursuance of such contract, actually delivered, the right to retain possession, for the purpose and upon the terms set forth in the contract, was perfected. The defendants contend that conceding this to be so, the plaintiff acquired no right or title to, or claim upon the accounts for securing the payment of which the bonds were given. It is undoubtedly true, as contended and as shown by the authorities cited, that "In general, in an assignment of the mortgage without any transfer

of the note, bond or debt secured thereby, the assignee takes only the legal estate, which he will hold in trust for the owner of the note or other mortgage debt." This proposition does not, however, aid us in the decision of the question presented here. There was not, at the time of the execution of the lien bond nor of the delivery to plaintiff, any note, bond or account in existence to be assigned or delivered. The lien bond was executed to secure an account for advancements thereafter to be made to aid in the cultivation of a crop for the current year. Those instruments generally used by merchants and farmers in this State, are peculiar and unlike, save by analogy, any other form of contract. They had their origin in the conditions existing in this State, by reason of the changed method of cultivating lands, after the late civil war and were first authorized by the Act of 1866-7. Code, sec. 1799. It has been found difficult to apply to them, in many respects, the principles by which the rights of parties, by assignment or otherwise, are governed by the law of negotiable instruments and mortgages securing existing debts. While they are executed only by the party to whom the advancements are to be made, they have many of the attributes of a bilateral contract. The value of the security is largely, and often entirely, dependent upon the performance of the agreement of the party who is to make such advancements. The entire contract is set forth in one paper—there is no existing debt as in the ordinary mortgage to which the security is but the incident. When assigned for any purpose they are of no value to the assignee if the account as it accrues, by reason of the advancement of supplies, does not enure to his benefit. The assignability of all choses in action, or other contractual rights has in recent years, by statutes and decisions of the courts, been very much enlarged. There can be no question that a contract for money to become due in the future, may be assigned, and that when the money is due, the assignee may sue for and recover it in his own name, subject

to such defenses as the debtor may be entitled to make, as the real party in interest. We can perceive no reason why the lien bond with all rights, then existing, or thereafter, in pursuance and execution of its terms accruing, may not be assigned. In ascertaining what passes by the assignment, the intention of the parties will control. "To ascertain the intention of the assignor and assignee as to what interests, rights or property they intended should pass under the assignment and to carry out such intention as nearly as may be done without violence to the language used by them, is, as in the case of all other contracts, a cardinal rule." 4 Cyc., 73; *Pass v. McRoe,* 35 Miss., 143.

"When a mortgage was transferred pursuant to an agreement as security for a debt, but there was no assignment of the mortgage debt, it was held that if essential to give effect to the assignment, the assignee might be regarded as having an interest in the debt for which both the note and mortgage were securities; and that the legal effect of the transaction was to transfer to the assignee the property embraced in the mortgage as security for his advance." Jon. Chal. Mort., 505.

The rule is well stated by *Andrews, J.,* in *Campbell v. Birch,* 60 N. Y., 214, in discussing the question presented upon this appeal. He says: "It is a general principle applicable to the construction of grants or contracts that they should be construed so as to give them effect according to the intention of the parties. When a thing is granted, everything possessed by the grantor, passes as incident which is necessary to make the grant effectual." In that case the note was retained by the mortgagee; the court held that it passed to the assignee of the mortgagee. It is also said: "It should be mentioned, as a qualification to the rule requiring the transfer of the debt along with the assignment of the mortgage, that when a mortgage has been made and no separate obligation has been given for the payment of the money secured by

the mortgage, an assignment necessarily transfers all the rights and interests under it." 2 Am. & Eng. Enc. (2nd Ed.), 1086. The case before us comes clearly within the qualification. To hold otherwise would defeat the manifest intention of the parties and attribute to them a purpose to do a vain thing, under the form of a well considered business transaction. If Coble only intended by delivering the lien bonds, to pass them and retain the accounts to accrue, which alone made them valuable, he was keeping his promise to the ear and breaking it to the sense. Courts should endeavor to so construe the conduct and language of men as to carry out in good faith their honest purposes. The suggestion that the contract and delivery of the lien bonds was not supported by a valuable consideration, was not pressed here. It is elementary learning that indulgence or extension of time for payment of a debt constitutes a valuable consideration; applications of the principle are found in numerous cases in the reports. Notice to the debtor of the assignment of a non-negotiable instrument is necessary to protect the assignee from the effect of a payment to the original creditor, but such notice is not necessary to the validity of the assignment as between the assignor and assignee. 4 Cyc., 32; *Ponton v. Griffin,* 72 N. C., 362.

For the reasons set forth we are of the opinion that, as against Coble, the plaintiff became the owner of the five lien bonds and of the accounts as they accrued, for the security of which they were executed. The finding of His Honor that they were not included in the list of accounts furnished by Coble, to defendants McNair and Pearsall, relieves us of the necessity of considering several of the questions discussed in the argument. We have examined the contract made by Coble with the defendants, of January 30, 1898, to ascertain whether the accounts passed independently of the list furnished "for identification." The description of the choses in action assigned by the contract is "all accounts whatever

owing to me as evidenced by my book of accounts." If the defendants were compelled to rely upon this language as the basis of their right, it is exceedingly doubtful whether any accounts contracted subsequent to January 30, 1898, passed. With the aid of the list furnished, it is probable that the intention to pass the accounts named therein would be ascertained—to include those made after the date of the contract. This is immaterial here because of the finding that the ones in controversy were not on the list.

The defendants' counsel say, that conceding this to be true, the plaintiff cannot recover in this action unless it shows that Coble paid to them the identical money received by him from the parties owing the accounts. This is true, but the finding of fact is that Coble "collected on the five lien bonds claimed by the plaintiff, the sum of $257.75 prior to the 3rd day of October, 1898, and turned it over to McNair and Pearsall, and that subsequently thereto defendants McNair and Pearsall, collected on said lien bonds the sum of $556.99." This finding fixes the defendants with the receipt of the identical money paid on the accounts secured by the lien bonds. We can see no reason why the plaintiff may not recover the amounts thus coming into their possession. It is insisted, however, that by the acceptance of the draft by plaintiff's agent, drawn by Coble upon the defendants for $257.75, to be paid out of any balance remaining in their hands after the payment of their debt, released the defendants from any claim on account of the receipt of the money. It is well settled that unless expressly so understood and agreed, the acceptance of a draft from a debtor does not merge the debt, or operate as a payment. *Wilson v. Jennings,* 15 N. C., 90; *Mauney v. Coit,* 80 N. C., 300. The parties did not, by reason of the acceptance of the draft, in any respect change their status, or surrender any rights as between each other. We can see no reason why upon surrendering, or what was equivalent, destruction of the draft, the plaintiff may not sue upon the original

cause of action. We concur with His Honor in this respect. This disposes of the exceptions of the defendants. The judgment in that respect must be affirmed. The other branch of the case is presented by the exception of the intervenor, G. Ober & Sons' Co. His Honor was of the opinion that as the plaintiff had no notice of their claim to the proceeds of the guano sold by Coble, they were not affected thereby. We cannot concur in that opinion. It appears from an inspection of the contract made by Coble with Ober & Sons' Co., bearing date January 17, 1898, that he was to sell the guano, and deliver to Ober & Sons' Co., notes of the planters to whom he sold, to be held by them as collateral security, and that all proceeds of guano sold, were to be held in trust by Coble for the payment of his notes. As between Coble and Ober, there can be no question that the accounts were held as the property of the latter, and the money collected thereon was held in trust for them. Contracts containing the same language in respect to the terms upon which the guano was to be sold and the proceeds held, were construed by this court in *Chemical Co. v. Johnson,* 98 N. C., 123, and *Guano Co. v. Bryan,* 118 N. C., 576. In the last case, *Mr. Justice Montgomery* said: "There can be no doubt that the contract makes the defendant a trustee for the plaintiff's benefit of the guano sold to him by the plaintiff, of the notes taken by the defendant from the purchasers of the guano and of the cash money derived from the sales and of that collected on the notes." The right which the plaintiff acquired by the contract, etc., was to have the amount due, or to become due to Coble, for his own property sold to his customers, not for the amount due him for the property of some other person, or which he held in trust for some other person. It will be observed that the contract with Ober was made January 17, 1898, some nine days prior to the contract with the plaintiff. There is no uncertainty as to what were Ober's rights under that contract. The accounts accruing for the sale of the guano were their property, and

the proceeds, when collected, were in the possession of Coble, in trust for him. The plaintiff was not a purchaser for value or otherwise of Ober's property. The question of notice does not arise—it is one of title to the property. The same process of reasoning, and an application of the same principles which entitles the plaintiff to recover the amount which went into the possession of the defendants from the account due for Coble's goods, entitle the intervenors to recover the amount representing their guano. This is not a case of conflicting equities, but of following the funds belonging to the parties. There is nothing in the testimony or the findings to show that defendants McNair and Pearsall parted with anything of value for the amounts turned over to them, or collected by them. They simply applied it to the indebtedness of Coble by mistake, supposing that it was his money, whereas, in fact, it was the money of the plaintiff and G. Ober & Sons' Co. They will pay it to the parties entitled and charge it back to Coble, leaving his indebtedness as it would have been if he had not erroneously turned it over to the wrong parties. It is manifest that all parties were acting in good faith, supposing that there would be enough to pay all of them—in this they seem to have been mistaken. We can see no reason why the intervenors should not recover the full amount collected by Coble from the sales of their guano, which is found to be $231.

The judgment of His Honor must be modified that the plaintiff recover of defendants the amount found to have been received by them, less $231, for which the intervenors will have judgment. The costs of this court will be divided between the plaintiff and defendants. We can see no reason why plaintiff may not recover judgment for their debt against the administrator of Coble, subject to a deduction of the amount recovered of defendants McNair and Pearsall.

The judgment is

Modified and Affirmed.