MRS. T. W. EASON v. T. F. GIBBS et al.

Middle Section. January 20, 1926.

No petition for Certiorari was filed.

1. **Pledge. Actual delivery of pledged property is necessary.**
   The delivery of pledged property by the pledgor to the pledgee is absolutely necessary to the life of the contemplated pledge.

2. **Pledge. Actual delivery of property pledged need not be contemporaneous with pledge.**
   Where principal note was endorsed as secured by other notes and the evidence showed that the pledged notes were not actually delivered until 45 days later, held that the delivery relates back to the date of the contract of pledge and is good.

Appeal from Chancery Court of Dekalb County, Hon. W. R. Of-ficer, Chancellor.

Affirmed and remanded.

R. L. Turner, of Smithville, for appellants.
Wade and Jackson, of Smithville, for appellee.

FAW, P. J.  The original bill in this case was filed on February 7, 1924, by Mrs. T. W. Eason as the sole complainant against T. F. Gibbs, G. G. Gibbs and R. H. Sandlin as defendants.  By subsequent amendments, O. B. Griffith and Tom Scott were made defendants to the bill.  On application of complainant, the court also appointed Sam W. Foster, as administrator ad litem of the estate of G. P. Butterbaugh, to defend this suit for said estate.

Several issues of law and fact were presented for the decision of the chancellor on the record below, but the assignments of error in this court raise, in substance and effect, only one question.

Defendants Griffith, Sandlin and Scott, prayed and were granted an appeal from the decree of the chancellor, but Sandlin did not perfect his appeal.  Griffith and Scott filed an appeal bond and have assigned errors here.

The facts of the case, as presented by the complainant's pleadings, and found by the chancellor from the pleadings and proof, are as follows:

On October 13, 1914, Kirk Eason loaned the sum of $1000 to T. F. Gibbs.  These parties lived at or in the vicinity of the town of Alexandria, in Dekalb county, and the transactions between them, out of which this law suit subsequently arose, took place in the banking house of the Bank of Alexandria, where Kirk Eason was accustomed to transact his business, and where he and his mother (the complainant) had a "lock box" in which their valuable papers were kept.

At the time said loan was made, T. F. Gibbs executed his promissory note, payable to the order of Kirk Eason, for $1000, dated October 13, 1914, due October 14, 1915, with G. G. Gibbs and J. A. Gibbs as sureties thereon.  On the face of the note T. F. Gibbs, G. G. Gibbs and J. A. Gibbs appear as joint makers, but the proof shows that, as between the makers themselves, T. F. Gibbs was principal and G. G. Gibbs and J. A. Gibbs were sureties.  Said note provided for legal interest thereon from date until paid, and for attorney's fees if collected by an attorney.

Said note bore two endorsements of even date with the note.  One of these endorsements was as follows:

"This note is secured by the pledge and deposit of the following notes.

"G. P. Butterbaugh ................................. $400
"G. P. Butterbaugh ................................. $375
"This October 13, 1914.

"T. F. Gibbs."

The other of the two endorsements was as follows:

"I hereby transfer the within note to Mrs. T. W. Eason for value received 10/13/14.

"Kirk Eason."

The two endorsements above quoted (except the signatures) are in the handwriting of J. F. Roy, who was, on October 13, 1914, an officer of the Bank of Alexandria. Kirk Eason died in the year of 1917, and J. F. Roy died before the institution of the present suit.

The two Butterbaugh notes mentioned in the endorsements above quoted were delivered to Kirk Eason and by him, or at his direction, were pinned to the aforesaid Gibbs note of $1000, which Kirk Eason had assigned to the complainant by endorsement, and had delivered to her by placing it in her lock box in the Alexandria bank. But the Butterbaugh notes were not delivered to complainant at the time of the assignment and delivery of the Gibbs note. This is the inference to be drawn from the fact that each of the two Butterbaugh notes bears an endorsement in these words:

"For value received I transfer the within note to Kirk Eason together with the lien and I guarantee the payment of the same. This 11/28/14.

"T. F. Gibbs."

The Butterbaugh notes bore date of March 31, 1914, and were payable to the order of T. F. Gibbs. One of these notes was for $400, with interest from its date, and was due January 1, 1916. The other Butterbaugh note was for $375, with interest from its date, and was due January 1, 1917.

The Butterbaugh notes were secured by a vendor's lien expressly retained on a tract of land in Dekalb county conveyed by T. F. Gibbs to G. P. Butterbaugh and wife. Butterbaugh and wife conveyed a part of said tract of land to appellant Griffith on March 19, 1917; and on March 20, 1917, Butterbaugh and wife conveyed another parcel of said Gibbs tract to R. H. Sandlin (defendant below). On April 9, 1917, Butterbaugh and wife conveyed the remainder of said Gibbs tract to one Stratton Malone, who in turn conveyed same to appellant Scott.

J. A. Gibbs was not sued in this case for the reason (as stated in the bill) that he was dead and no one had been appointed to administer his estate. G. G. Gibbs successfully pleaded the Statute of Limitations. The plea of the Statute of Limitations on behalf of T. F. Gibbs was overruled because of new promises made by him to pay the note in suit. However, T. F. Gibbs "pleaded usury," and proved that he had paid interest on the $1000 note at the rate of twelve per cent per annum each year after the date of the note up to the year of 1922, and he was allowed credits for such usurious payments.

After deducting the credits for usury as aforesaid, the chancellor rendered judgment in favor of complainant Mrs. T. W. Eason and against defendant T. F. Gibbs for $715.44, which amount included interest and attorney's fees.

As the Butterbaugh notes were collateral security to the Gibbs note, and the amount due on the collateral notes exceeded the amount of the judgment against T. F. Gibbs, the judgment was declared a lien on the land sold by Gibbs to Butterbaugh and wife and then by Butterbaugh and wife (in three separate parcels) to Griffith, Sandlin and Scott, and the chancellor decreed that said lands be sold for the satisfaction of said recovery; but it was ordered that the three parcels be sold separately, and in the inverse order of alienation by Butterbaugh and wife, until the proceeds were sufficient to satisfy the judgment and costs, but no further.

No judgment was rendered against anyone for the amount of the Butterbaugh notes in excess of the balance for which judgment was rendered on the Gibbs note. No reason for this is stated in the decree but the record discloses equities between Butterbaugh and Gibbs which would preclude a judgment in favor of Gibbs, and we assume that it was for this reason that the chancellor did not grant a recovery for the remainder of the collateral notes after the satisfaction of the principal note.

The appellant's assignments of error are as follows:

(1) The court erred in rendering a decree declaring the two notes for four hundred dollars and for three hundred and seventy-five dollars, executed to T. F. Gibbs by G. P. Butterbaugh and wife, liens on the lands of appellants, Griffith, Sandlin and Scott.

(2) The court erred in rendering a decree directing the lands of any of appellants to be sold for the satisfaction of the judgment complainant obtained against the defendant, T. F. Gibbs.

(3) The court erred in holding in effect that the complainant could maintain the action against these appellants, when the suit should have been brought, if at all, against these appellants by the administrator of the estate of Kirk Eason.''

The able counsel for appellants states a single proposition in support of the three assignments of error, supra. The contention made on behalf of appellants is stated in the brief of their counsel (immediately following the assignments of error) as follows:

''It will be seen from an investigation of the record that the one thousand dollar note was executed by T. F. Gibbs to Kirk Eason on October 13, 1914, and on the same day Kirk Eason transferred the note to the complainant, who was his mother; that, while Gibbs on that date signed an agreement that he had secured the thousand dollar note by the pledge of the two Butterbaugh notes, in fact he did not on that date transfer or deliver to Kirk Eason the two

Butterbaugh notes, but forty-five days later, November 28, 1914, he did actually, under the record, transfer and deliver to Kirk Eason the two land notes executed by Butterbaugh and wife. There could have been no delivery of these two notes to Kirk Eason on October 14, 1914, because there could then have been no reason for the transfer of the notes forty-five days later, hence we are driven to only one reasonable conclusion, that is, that the notes were delivered to Kirk Eason on the day they were transferred to him by Gibbs, November 28, 1914; then, if they were not delivered until forty-five days after the execution of the thousand dollar note, the complainant took no interest in these notes because Kirk Eason transferred the thousand dollar note to complainant on October 14, 1914—forty-five days before he got the two land notes—hence could not have transferred the land notes to her, hence it is respectfully insisted that the chancellor erred in declaring the notes liens on the lands of appellants, and in rendering judgments or a decree directing that the lands be sold, and that this suit could not be maintained by the complainant against these appellants for the following reasons, namely:

(a) The two land notes were never transferred to the complainant, as shown by the transfers themselves, because the thousand dollar note was transferred October 14, 1914, and the land notes delivered and endorsed to Kirk Eason forty-five days later, so if a suit could be maintained at all against these appellants and their lands it could only be maintained in the name of the administrator of the estate of Kirk Eason.

(b) The thousand dollar note was transferred and, constructively delivered to complainant on October 14, 1914, forty days before the land notes were endorsed and transferred to Kirk Eason, hence he did not, and could not, deliver them to complainant until after the transfer and delivery of the thousand dollar note, and, in order to give the assignee any interest in the collateral notes, they must be actually delivered to the assignee at the time of the delivery of the note which they secure in order to give the assignee any rights in the collateral notes, and hence, as these two notes were not delivered to Kirk Eason until forty-five days after the transfer and delivery to complainant of the thousand dollar note, she can have no interest in the collateral notes, can have or assert no lien against the lands of the appellants, and cannot maintain this suit against them.''

In its last analysis, the sole contention of appellants, as stated in the above-quoted excerpt from their brief, depends upon the proposition of law that ''in order to give the assignee any interest in the collateral notes, they must be actually delivered to the assignee at the time of the delivery of the note which they secure.'' We do

528 TENNESSEE APPEAL, VOL. I.

not think this is a sound proposition of law. True, "it is elementary law that the delivery of pledged property by the pledgor to the pledgee is absolutely necessary to the life of the contemplated pledge" (18 A. L. R., p. 587; 31. Cyc., pp. 799-800); but "delivery in accordance with the terms of a previous contract supplies the necessary element to render the pledge complete." 31 Cyc., p. 801, citing Virginia-Carolina Chemical Company v. McNair, 139 N. C., 326, 330, 51 S. E., 949, q. v.

. In the instant case, the endorsement on the note of Gibbs to Eason at the time it was executed manifested an intention to pledge the Butterbaugh notes as security for the Gibbs note, and it shows that there was a contract between the parties to that effect at that time. "It was not essential for the delivery to be made at the time of the contract, and the pledge took effect upon subsequent delivery made in performance of the contract." American Pig Iron Co. v. German, 126 Ala., 194, 85 Am. St. R., 21, 26.

"Where property is pledged, the delivery need not be made contemporaneously with the pledge, and, if made thereafter, it relates back to the date when the contract of pledge was made." 21 R. C. L., p. 644; Garrison v. Vermont Mills, 154 N. C., 1, 31 L. R. A. (N. S.), 450, 454.

The delivery by T. F. Gibbs of the Butterbaugh notes on November 28, 1914, related to the date of the contract under or pursuant to which the delivery was made, and the act of Kirk Eason in pinning the Butterbaugh notes to the $1000 note and placing the three notes, thus pinned together, in complainant's lock box, with the collateral contract and the written assignment of the $1000 note endorsed thereon, was, in law, a delivery to complainant of the collateral notes as well as the principal note.

The only authority cited by counsel for appellants is the case of Johnson v. Smith et al., 11 Humph., 396. The holding in that case is well stated in the head note as follows: "The assignment by the pawnee of the debt secured by the pawn, unaccompanied with the delivery of the pawn or pledge, either actual or constructive, will not carry with it and vest in the assignee the lien upon the property." The facts of that case did not present the question raised by the assignment of error in the instant case. In Johnson v. Smith, the pledge (a steamboat) was taken out of the possession of the pledgee by one asserting a superior lien, and after losing possession of the pledge the pledgee assigned the note which had been secured by the pledge to Johnson, who thereafter sued to recover possession of the pledge. It was held that as Johnson had never had possession of the pledge, he had never obtained a lien thereon. The distinction between the case of Johnson v. Smith, and the instant case is, we think, obvious.

The assignments of error are overruled and the decree of the chancellor, insofar as it is brought up to this court by the appeal, is affirmed. The case will be remanded to the chancery court of Dekalb county for the execution of the decree of the chancellor, and for such further orders as may be necessary to effectuate that decree. The costs of the appeal will be adjudged against appellants Griffith and Scott and the surety on their appeal bond.

Crownover and DeWitt, JJ., concur.