**THREE MOUNTAINEERS, Inc.,**
Plaintiff,

v.

**G. H. RAMSEY, Max M. Dalton, W. H. Howze, Graybar Electric Company, Incorporated, and The United States Government, Defendants.**

Civ. No. 1561.

United States District Court
W. D. North Carolina,
Asheville Division.

Sept. 12, 1956.

Uzzell & DuMont, Asheville, N. C., for plaintiff.

Joel B. Adams, Asheville, N. C., for Graybar Electric Co., Inc.

J. M. Baley, Jr., U. S. Dist. Atty., Hugh Monteith, First Asst. U. S. Dist. Atty., Asheville, N. C., for the United States.

WARLICK, District Judge.

This is an interpleader action instituted under 28 U.S.C.A. § 1335 and has to do with certain claims made to a fund now on deposit with the Clerk of this court. Plaintiff having paid into the Registry of this court $1,219.48 (this sum represents the balance due under the contract by plaintiff for work done for it by the Asheville Electric Company) jurisdiction is vested in the court under 28 U.S.C.A. § 2410. The amount involved is $500 or more. The essential facts are not disputed, and two questions apparently are involved:

1. "Was a valid assignment made by the Asheville Electric Company to Graybar Electric Company of money to become due to the Asheville Electric Company under their contract with plaintiff?"

2. "Does such assignment, if valid, take priority over the tax liens of the United States?"

Plaintiff is a North Carolina corporation having its principal place of business at Asheville, and is engaged in the manufacture of fine wood products.

G. H. Ramsey and Max M. Dalton were partners and did business as the Asheville Electric Company, engaged primarily in general electric work, and as such were awarded a contract based on a valuable consideration to supply the materials, labor, etc., and complete the work that plaintiff desired done in renovating its business and manufacturing properties in Asheville. After securing such contract from plaintiff, and during the month of September 1955, G. H. Ramsey, representing the Asheville Electric Company, approached a representative of the defendant, Graybar Electric Company, seeking to effect some means by which he and his associate could secure the various electrical supplies that would be needed by them in performing their contract with the plaintiff.

Graybar Electric Company, Inc., is a New York corporation and maintains a place of business in Asheville, in the Western District of North Carolina, W. H. Howze, who originally made claim to the fund, or a part thereof, and filed answer, had withdrawn his claim before the trial of the issues involved and is not now a party thereto.

At that time the Asheville Electric Company was in default with Graybar in the approximate amount of $6,000 which had been temporarily adjusted by the execution of notes to be paid every fifteen days at the rate of $500 at each pay period. Asheville Electric had no open account credit with Graybar at this particular time, and for the purpose of finding the actual facts without prejudice I am inserting the evidence, stenographically reported at the trial, so that a determination of the status of the contract can best be known. The controversy hinges on this evidence. (Testimony of John E. David.)

"Q. Did anyone from the Asheville Electric Company approach you in September or October, 1955, with regard to a job at a plant being constructed by the Three Mountaineers? A. They did.

"Q. Who approached you, Mr. David? A. Mr. Ramsey.

"Q. Is that the Mr. Ramsey who is here in the courtroom? A. It is.

"Q. Tell us as well as you can remember when this happened and what, if anything, was said between you and Mr. Ramsey. A. I have it in my files. I immediately put it on paper at the time I talked with him. He said he had a job—

"Q. When was that? A. This was on September 27th. To be specific, 1955.

"Q. 1955? A. Yes. Said he had a job that would run approximately $5500.00. That he needed $3,000.00 in material, roughly, to complete it, and they wanted to know if we could possibly work out any arrangement to handle it; and I, of course, told him at the time that we could not give you open account credit in view of your present status with us, and I was also aware of other outstanding indebtednesses, and that the only way we could possibly consider handling it would be on a guarantee basis from Three Mountaineers, and that a double endorsement basis would be acceptable provided the check was drawn for double endorsement."

"I received a letter from Mr. Lashley on that same day acknowledging this and said the check would be drawn for double endorsement. I, in turn, acknowledged his letter and asked that the check be sent to the attention of Mr. Coyner, of our Asheville office. And I believe that about covers it."

During the trial Graybar introduced Exhibits 1, 2 and 3 which have to do with the alleged assignment which I incorporate herein as relevant facts, tending to show the exact status of the purported agreement.

For identification:
Defendant Graybar's
Exhibit No. 1
"Three Mountaineers, Inc.
  "Post Office Box 5066
"Asheville, North Carolina***
          "September 27, 1955
"Graybar Electric Co.
"221 Patton Ave.
"Asheville, N. C.
"Attention: Mr. John English
"Gentlemen:
"We have given the contract for electric wiring in our new plant buildings to Asheville Electric Company, and Mr. G. Henry Ramsey has asked us to tell you that he has requested all checks and payments for work done on this contract be made payable jointly to Graybar Electric Co., and Asheville Electric Company for double endorsement.
"We understand Mr. Ramsey has discussed this with you and we suggest you make proper notation on your records.
          "Cordially yours,
          "Three Mountaineers, Inc.
          "By: W. H. Lashley (s)
              "W. H. Lashley
"WHL/bb
"cc to Asheville Electric Co."

          Defendant Graybar's
          Exhibit No. 2
"CC: H. S. Corey, Jr.   For identification:
    "K. H. Coyner
    "C. T. Alley
          "October 3, 1955
"Mr. W. H. Lashley
"Three Mountaineers, Inc.
"P. O. Box 5066
"Asheville, N. C.
          "Re: Asheville Electric Co.
"Dear Mr. Lashley:
  "We wish to acknowledge with thanks your letter of September 27th addressed to the attention of Mr. John English with our Asheville office in which you state that all future payments made to the Asheville Electric Company will be drawn jointly in the name of Graybar Electric Company.
  "Please send these checks to our Asheville office to the attention of Mr. Coyner

who will be able to expedite endorsements for all parties concerned.

"Thank you for your cooperation.

"Yours very truly,

"Credit Manager

"JEDavid/mhn

"CC: Asheville Electric Co."

For identification:
Defendant Graybar's
Exhibit No. 3

"Three Mountaineers, Inc.

"Post Office Box 5066

"Asheville, North Carolina***

"October 6, 1955

"Graybar Electric Company, Inc.

"120 West Morehead Street

"Charlotte 1, N. C.

"Attention: Mr. J. E. David

"Dear Mr. David:

"Judging from your letter of October 3, I am inclined to think that my letter of September 27 was not quite clear.

"I did not say that all future payments to the Asheville Electric Company would be made payable jointly with Graybar Electric Company, Inc. I believe you will find that I said, payments to Asheville Electric Company for work done on our new plant buildings would be drawn jointly.

"Cordially yours,

"Three Mountaineers, Inc.

"BY: /s/ W. H. Lashley

"W. H. Lashley

"WHL/bb

"c.c To Asheville Electric Company"

On Graybar's approval of this plan various electrical supplies were furnished by it as requested by Asheville Electric and were accordingly billed to Asheville Electric Company, with a notation in the upper left-hand corner "Three Mountaineers Job". The first material was delivered on September 28, 1955 and the last was billed out to Asheville Electric on February 6, 1956. The total costs of the supplies furnished by Graybar to Asheville Electric being $3,928.85. There is a balance now due Graybar on account of the supplies purchased from it and delivered to Asheville Electric in the sum of $1,664.94. Three payments were made on the supplies furnished, one for October for $495.99, another for the amount furnished during November and December in the sum of $390.52, and the last payment being on January 6, 1956, for $1,335.72. Cash discounts taken account for the difference in the amount shown.

Before each payment was received from plaintiff, Ramsey, representing the Asheville Electric would go to the office of Graybar and would be given the amount due for supplies furnished to that date, and on getting the bill therefor, would take it to the Three Mountaineers who would then issue check for that amount, less the cash discount,— making the checks payable to Asheville Electric and Graybar Electric Company as joint payees. Ramsey would then take the check to the office of Graybar Electric Company, endorse it, and would leave the check with Graybar and credit would be accordingly given for the previous purchases. Each check received was in full for the amount then due to Graybar, so that on January 12, when the check for $1,335.72 was endorsed by Asheville Electric and delivered to Graybar, the account at that time was paid in full, with the possible exception of an item of $40 which evidently had been overlooked. The amount now claimed by Graybar is for electrical supplies furnished to Asheville Electric after January 12, 1956.

During the period involved Graybar agreed with Asheville Electric that $1,000 could be paid by Three Mountaineers to it so that certain amounts due by it for labor could be paid. Accordingly two checks were drawn by Three Mountaineers, each payable to Asheville Electric Company and delivered to it for the purposes intended. One check was for $600; another for $400. These two checks were given on different occasions. At the time each was delivered Asheville Electric had fully paid Graybar for all supplies previously furnished to it.

The United States lays claim to the fund on deposit on account of certain

federal tax liens covering withholding taxes, social security taxes, and insurance contributions due it from Asheville Electric Company, which at the time of this trial amounted to $1,381.61, with interest from July 15, 1956. This is a balance due on the first quarter of 1955 for $287.56, assessed on June 23, 1955, and recorded in the office of the Register of Deeds of Buncombe County, on September 9, 1955, and an additional balance for the second quarter of 1955 of $1,094.05, assessed on September 15, 1955, the assessment being recorded in the Registry of Buncombe County on November 4, 1955.

On February 13, 1956 agents representing the Internal Revenue Department seized the business and all of the assets of the Asheville Electric Company and every of the obligations due to it. Among the accounts levied on was the account of Three Mountaineers, as it was among those named by Mr. Ramsey as being obligated for materials furnished and work done.

Graybar contends that it is entitled to have the fund on deposit determined as its property for that it holds a valid assignment, and that no part of the fund was ever at any time the property of the Asheville Electric Company.

The government contends that no such assignment existed and that the amount paid into the Registry was property which at all times belonged to the Asheville Electric Company and that its liens are such that it is entitled to have paid to it the full amount herein.

The liens asserted by the United States stem from 26 U.S.C.A., §§ 6321, 6322 and 6323. Section 6321 provides:

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

Section 6322 provides that the lien imposed by Section 6321 arises at the time the assessment is made and continues until the liability for the amount so assessed is satisfied or becomes unenforceable by reason of lapse of time.

Section 6323 provides that the lien shall not be valid against any mortgagee, pledgee, purchaser or judgment creditor until notice thereof has been filed by the Secretary or his delegate in the office designated by the law of the state in which the property subject to lien is situated or may be found. It is therefore obvious under Section 6321 that the lien of the United States takes effect upon all property and rights of property belonging to the person liable for said tax.

The statutes covering collection of taxes are broad and comprehensive and Congress intended to subject all of a taxpayer's property except that specifically exempt to the payment of taxes. Citizens State Bank of Barstow, Tex. v. Vidal, 10 Cir., 114 F.2d 380, 382.

The claim of Graybar Electric Company arises wholly from an alleged assignment to it by the Asheville Electric Company, of the fund formerly due by Mountaineers and now lodged in the registry of this court. In that narrow sphere the rights of the parties must be determined.

What constitutes an assignment and its validity involves the law of North Carolina, and the decisions of its Supreme Court. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

The question of priority and the force and effect of liens of the United States for unpaid taxes and the validity thereof, is always a federal question to be finally determined by the courts of the United States. United States v. Acri, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264.

The Supreme Court of North Carolina has often dealt with the question of an assignment, and it is firmly established that unless expressly prohibited by statute or in contravention of some principle of public policy, all ordinary

business contracts are assignable, and that a contract for money to become due in the future may be assigned. Chemical Co. v. McNair, 139 N.C. 326, 51 S.E. 949; North Carolina Bank & Trust Co. v. Williams, 201 N.C. 464, 160 S.E. 484; Armour Fertilizer Works v. Newbern, 210 N.C. 9, 185 S.E. 471; Bank of Northampton v. Town of Jackson, 214 N.C. 582, 586, 200 S.E. 444.

In Motz v. Stowe, 83 N.C. 434, 439, the court applied the general principle that anything written, said, or done for value *in pursuance of an agreement to place a fund out of the owner's control and to appropriate it for the benefit of another,* constitutes an equitable assignment. Page Trust Co. v. Carolina Construction Co., 191 N.C. 664, 667, 132 S.E. 804.

■ "In equity a present assignment of money having a potential existence but not yet due, will operate on the fund as soon as it is acquired." Wike v. Board of Trustees of New Bern Graded Schools, 229 N.C. 370, 372, 49 S.E.2d 740, 742.

■ It can thus be seen that such claim to the fund herein as is asserted by Graybar Electric could be the subject of a valid assignment under the laws of North Carolina. Inquiry therefore, is directed to the thought whether the parties in their contract actually effected a valid assignment. It would seem from a careful analysis of the evidence, which is specifically brought forward in this decision, that the most the parties agreed to when the Asheville Electric made application for an extension of credit by Graybar Electric was that Graybar was agreeable to furnish the needed supplies to Asheville *if Three Mountaineers* would be found willing to execute its checks for the work done under its contract with Asheville Electric, to Asheville Electric and Graybar Electric, as joint payees. This seems to have met the requirements of Graybar and evidently was acceptable to the Three Mountaineers and afforded at least a convenient and well-nigh certain means of payment for the supplies furnished.

It, however, did not take into consideration intervening liens which could be filed by interested parties. Rising no higher than that source I am of the opinion that this purported contract did not constitute a valid assignment, in law or in equity, and that the fund paid into the registry by Three Mountaineers was subject to being impressed by the lien filed by the United States.

Having thus held, it would appear unnecessary to discuss further the several very interesting points which are set out in the brief of the government as reasons assigned for its right to the fund. I consequently forego that discussion.

Counsel will submit decree carrying into effect the government's right to recover the amount deposited with the court.

The cost of this action is to be deducted by the Clerk before paying out the fund to the proper authorities.