In the Matter of Graham Vernon GRIFFIN t/a Marshville Seed Company, Marshville, North Carolina. No. 1593.

United States District Court
W. D. North Carolina,
Charlotte Division.

Heard Oct. 23, 1963.

Decided Dec. 13, 1963.

F. Fetzer Mills, Wadesboro, N. C., for bankrupt.

Everett L. Henry, Lumberton, N. C., for petitioner Armour Agricultural Chemical Co.

E. Avery Hightower, Wadesboro, N. C., for creditor H. H. Martin.

CRAVEN, Chief Judge.

Graham V. Griffin, t/a Marshville Seed Company, and Armour Agricultural Chemical Company were parties to a "Contract of Limited Agency" by the terms of which Armour agreed to consign to Griffin fertilizer products for sale on commission. Griffin agreed that all products delivered to him and all cash, notes and accounts resulting from the sale of such products were and would be the property of Armour.

In 1961 H. H. Martin delivered to Graham V. Griffin, t/a Marshville Seed Company, lespedeza seed worth $6,040.20 for cleaning, processing, and bagging. In March, 1962, Martin purchased, on account, from Griffin ten tons of fertilizer products at a total price of $528.50; the account was assigned to Armour. Later Martin authorized Griffin to sell the above mentioned lespedeza seed; Griffin did so and converted the proceeds to his own use. After Griffin, t/a Marshville Seed Company, was adjudged a bankrupt, the Referee allowed the trustee to abandon to Armour the account receivable of H. H. Martin in the amount of $520.50, his indebtedness for the fertilizer. Martin protested the abandonment of his account, claiming that he was entitled to have Griffin's liability to him for the conversion of his lespedeza seed set off against the account; after a hearing, the Referee, on August 13, 1963, reversed his previous order and entered an order in conformity with Martin's contentions. The Referee found as a fact that no sign or other notice had ever been posted at Griffin's place of business (Marshville Seed Company) indicating that Griffin was acting as commission agent for Armour. From that finding of fact, the Referee determined that the following North Carolina Statute was applicable and controlling:

N.C.G.S. Section 66–72: "If any person shall transact business as trader or merchant, with the addition of the words 'factor', 'agent', '& Company' or '& Co.', or shall conduct such business under any name or style other than his own, except in case of a corporation, and fail to disclose the name of his principal or partner by a sign placed conspicuously at the place wherein such business is conducted, then all the property, stock of goods, and merchandise, and choses in action purchased, used and contracted in the course of such business shall, as to creditors, be liable for the debts contracted in the course of such business by the person in charge of same. Provided, this section shall not apply to any person transacting business under license as an auctioneer, broker, or commission merchant; in all actions under this section it is incumbent on such trader or merchant to prove compliance with the same."

This matter came on for hearing before the court upon Armour's petition for review of the Referee's order dated August 13, 1963.

Armour contends that N.C.G.S. Section 66–72 is inapplicable to the situation here involved for the reason that Griffin, t/a Marshville Seed Company, was *not*

Armour's *agent* within the purview of the statute but was its *consignee* and a "commission merchant" within the exception proviso of the statute.

The contract speaks both ways: it is captioned a "Contract of Limited Agency", but the body of it contains language indicating Griffin was a "consignee".

■ To answer Armour's contention that N.C.G.S. Section 66–72 is inapplicable requires analysis and construction of the statute and its application to the facts and the contract entered into between the parties. The North Carolina Supreme Court has apparently never had occasion to either interpret or apply this statute. This court ought not to undertake such construction and application unless absolutely necessary to a determination of the controversy. Such necessity does not appear. Assuming, without deciding, that the statute is inapplicable, as contended by Armour, the following considerations are deemed pertinent and controlling:

It is undisputed that Griffin, t/a Marshville Seed Company, was in possession of fertilizer, the nominal title of which was retained by Armour; that as a part of his overall business venture he was empowered to sell the fertilizer; that there existed no notice, formal or informal, that he was acting as the "limited agent" of Armour in sales transactions involving that fertilizer.

"The title may be in the principal, but the *peculiarity* of the transaction is that the owner places the goods in the hands of the agent or factor with authority to sell in his own name *without* disclosing the agency or the name of the principal." Holleman v. Taylor, 200 N.C. 618, 620, 158 S.E. 88, 89 (1931). (Emphasis added.)

Armour takes the position that all transactions involving the fertilizer were governed by the contract between Griffin and Armour; that since a consignment contract is not required by statute to be recorded, no notice of its course of dealing with Griffin was required; that under no circumstances can Martin's claim against Griffin be used as a set-off against *its* claim against Martin for the purchase price of the fertilizer. Armour's assertions are premised upon the following cases: Patapsco Guano Co. v. Bryan & Co., 118 N.C. 576, 24 S.E. 364 (1896); Hoffman v. Kramer, 123 N.C. 566, 31 S.E. 828 (1898); Lance v. Butler, 135 N.C. 419, 47 S.E. 488 (1904); Chemical Co. v. McNair, 139 N.C. 326, 51 S.E. 949 (1905). Those cases do, indeed, buttress Armour's position. Running through each of them is this general theme: title to the consigned property remains in the consignor, and it and all proceeds therefrom are impressed with a trust for the benefit of the consignor; no third-party rights can supervene those of the consignor in the property and proceeds, notwithstanding lack of any kind of notice of the relationship to the third party.

But Winslow Bros. & Co. v. Staton, 150 N.C. 264, 265, 63 S.E. 950 (1909) is a later case and a much better reasoned opinion. And, more compelling, the facts are remarkably similar to those in the instant case. In that case defendant purchased three mules for $737.50 from J. L. Spraggins, t/a J. L. Spraggins Feed and Sales Stables, and gave as consideration therefor $500.00 in cash and a release in full of Spraggins' personal debt of $250.00 to him. The trial court was reversed for refusal to admit defendant's evidence tending to show that he understood Spraggins to be in business for himself, that the sign over his place of business so indicated, and that defendant did not know that the mules in fact belonged to plaintiff for whom Spraggins was selling them under a contract of agency. Plaintiffs in this action were suing to recover the balance of the total purchase price from Staton—$237.50.

The Court noted that there was a "well-defined distinction" between this case and Hoffman v. Kramer, supra, relied on by Armour. That distinction was that in Hoffman the consignee-merchant held himself out as a "factor", one who is *known* in the commercial world to deal *solely* in the sale of merchandise consigned to him on a commission basis.

"They hold themselves out to the business world as such, and those who deal with them are fixed with *knowledge* of their calling and *know* that they act as the agents of others, and whatever is out of the 'usual course of trade' must put their customers upon notice." Winslow Bros. & Co. v. Staton, supra, 150 N.C. at 266, 63 S.E. 950 (Emphasis added.) The Court then pointed out that when one is engaged in a business of that nature and takes his own debt in payment for merchandise, "it is treated as no sale, for 'it is a departure from the usage of trade as well known by the creditor as it is by the factor, and therefore it is immaterial that the creditor believed the factor owned the goods himself'". Id. at 266, 63 S.E. at 951, citing Warner v. Martin, 52 U.S. 209, 13 L.Ed. 667.

Then, going to the English law and numerous other authorities the court observed:

"It was first held in England * * * that those who dealt with recognized factors were *not* put upon notice by the character of their calling, for we find in a note to the case of Radbone v. Williams, 7 Dumf. & E. Term Reports, 360: 'Where a factor, dealing for a principal, but concealing the principal, delivers goods in his own name, the person contracting with him has the right to consider him, to all intents and purposes, as the principal. And though the real principal may appear and bring an action upon that contract against the purchaser of the goods, yet the purchaser may set off any claim he may have against the factor in answer to the demand of the principal. This has been well settled.' To the same effect is George v. Clagett, 3 Smith Leading Cases, 189. * * *

"Afterwards a distinction seems to have been made by some of the English judges between those who are known to deal *exclusively* as factors and those who in addition do business on their own account. (Emphasis added.)

"We find that in the case of Baring v. Corrie, 2 B. & A. 137 it is said: 'But a mere general knowledge that the person selling the goods is a factor, if he also carries on business *on his own account,* will not be sufficient to charge the vendee with notice. He must know or have good reason to believe, that the vendor is acting as the agent of some other person in that particular transaction'. (Emphasis added.)

"By later English decisions, as well as in some of the highest courts of this country, it seems to be the prevailing opinion that he who deals with one who acts *exclusively* as a general factor *and holds himself out as such,* is put upon notice as to the agency by the character of the calling. (Emphasis added.)

* * *

"*On the contrary,* * * * where (one has) his own sign posted over the door of his place of business and, * * * (holds) himself out to the world as a dealer "on his own hook", * * * (his principals) are held to a certain responsibility for the acts of their agent, and the rule of law applies that the principal is liable where the agent acts within the scope of his apparent authority, provided a liability would attach to the principal if he were in the place of the agent." (Emphasis added.)

* * *

"(W)here a person sells goods to a purchaser, without disclosing his agency, and the purchaser has no knowledge that the former is not the owner of the goods, the purchaser may in an action by the principal for the purchase money set off a demand due him from such agent."

The law and principles of Winslow Bros. & Co. v. Staton, supra, are clearly applicable to the instant case and are wholly compatible with the equitable principles of bankruptcy law. Indeed, a contrary holding would achieve an unconscionable result. Other cases cited by

Armour, including Yale Jewelry Company v. Joyner, 159 N.C. 644, 75 S.E. 993 and Cone v. United Fruit Growers, Ass'n., 171 N.C. 530, 88 S.E. 860, are not in point.

Armour did not, by the terms of the "Contract of Limited Agency", attempt to restrict the nature of Griffin's business operation. Griffin held himself out, t/a Marshville Seed Company, as an independent merchant "on his own hook" dealing *generally* in the seed and farm supply business. Armour cannot now equitably complain that H. H. Martin was deceived. Clearly Martin is entitled to have Griffin's obligation to him set off against his indebtedness for the fertilizer.

The order of the Referee in Bankruptcy is affirmed.