ROBERT SIMPSON and wife v. ISAAC SIMPSON et al.

*Action to Recover Land—Deeds—Subscribing Witness—Mortgage—Clerk's Certificate—Probate—Transactions with Deceased Persons—Evidence—Powers of Sale—Legal Title.*

1. Where the surname of a subscribing witness to a deed was omitted in the Clerk's certificate of proof by such witness, such deed will not be rejected in evidence when the *fact* of the execution and probate are not disputed.

2. A plaintiff, in an action to recover land, who claims under a deceased mortgagor, is not competent to prove, in his own interest, payments on the mortgage note made by such mortgagor.

3. In evidence of her chain of title, the *feme* plaintiff introduced a mortgage given to indemnify the mortgagors under whom she claimed against loss by reason of their suretyship to the mortgagee in a sum of money due by note which they had endorsed. She offered to show further by her co-plaintiff, to whom the note was endorsed payable, and in their own interest, that $50 was paid on the note before judgment: *Held*, the maker of the note and the mortgagor being dead, such testimony should be excluded, under section 590 of *The Code*, as being a transaction with deceased persons.

4. Where it appeared from the testimony that the land in dispute was bid off at the sale under mortgage at a small price (which was not shown to have been paid), pursuant to a previous agreement between the trustees conducting the sale and the bidder, who, at the instance of one of the trustees, transferred his bid to the vendee: *Held*, no title passed by such sale, because the land conveyed was held as security for debt.

5. Where the mortgagee has no power of sale granted to him, a sale made by him is not effectual to pass the legal title to the mortgagor.

6. A plaintiff, under a vendee under such sale, must bring an action to foreclose, and cannot recover possession of the land in an action simply for that purpose.

7. The conveyances by the mortgagees and their vendee do not pass a naked legal title, and such conveyances cannot operate as a foreclosure.

8. Where, in an action to recover land, the defendants show adverse possession under color of title for seven years, under known and visible lines and boundaries, continuous and successive, and next preceding the institution of this action, the plaintiffs cannot recover.

This was a CIVIL ACTION, to recover land, tried before *MacRae*, *J*, at Fall Term, 1887, of the Superior Court of UNION County.

The plaintiffs claim title derived from Isaac Simpson, by virtue of a mortgage deed executed by him to W. T. Lemond and W. L. Simpson on the 12th day of September, 1859, and through *mesne* conveyances to the *feme* plaintiff.

The defendants claim title as heirs at law of Isaac Simpson, and allege the payment of the debt secured by the mortgage deed and a reconveyance. They also rely upon the lapse of time and the statute of limitation. They also deny the validity of the deeds under which plaintiffs claim, and insist that they (defendants) have title to the land, and, if not, they are entitled to have it sold under the mortgage to pay any sum that may be due on the debt secured thereby, and have the balance paid over to them, etc.

The plaintiffs reply, denying the averments in the answer, and asserting the validity of the deeds under which they claim.

The following issues were submitted:

"1. Are the plaintiffs the owners and entitled to the possession of the land described in the complaint?

"2. Do the defendants wrongfully withhold the possession thereof from the plaintiffs?

"3. Has the note made by Isaac Simpson, W. T. Lemond and W. L. Simpson to Robert Simpson for $312.50, dated September 11th, 1859, been paid, and have the sureties sustained any loss by reason of their suretyship?

"4. Was the land described in the complaint reconveyed by the mortgagees to Isaac Simpson, or to defendants?"

The plaintiffs introduced the following evidence:

1. A mortgage deed from Isaac Simpson to W. T. Lemond and W. L. Simpson, dated September 12th, 1859, a copy of which is sent. This deed recites the fact that W. T. Lemond and W. L. Simpson had endorsed a note of Isaac Simpson to Robert Simpson for the sum of $312.50, dated September 11th, 1859, and the purpose to secure the endorsers "against all responsibility" as such, and conveys the land in dispute to the said Lemond and Simpson, with the condition that the deed shall be void if the said Isaac Simpson, "his heirs, executors or administrators shall well and truly pay, or cause to be paid," the note of $312.50. It contains no power of sale, and no warranty or covenants of any kind. This deed was objected to as evidence, "upon the ground that it was proven by J. L. Potter, as appears from the Clerk's certificate, who was not the subscribing witness thereto."

2. A deed from William L. Simpson, surviving mortgagee, and J. Q. Lemond, executor of W. F. Lemond, to W. C. Ogburn, dated June 6th, 1870, and registered October 16th, 1879, the consideration named being $100.

3. Will of W. T. Lemond, duly proved and recorded and fully empowering executor to sell.

4. Qualification of executor of W. T. Lemond, letters testamentary, etc., all of which were in due form.

J. Q. Lemond, a witness for the plaintiffs, testified: "I am one of the executors of W. T. Lemond; my co-executor died before the mortgage sale; do not recollect when the sale was made; was present; there were two sales, the last at the court-house door; do not recollect what it was sold for; do not think we got anything for it; nothing came into my hands; the estate of W. T. Lemond is insolvent; * * * this debt will get nothing; I can't say whether we ever paid anything on the mortgage debt."

5. A deed from W. C. Ogburn and wife to W. L. Simpson, the *feme* plaintiff, dated February 11th, 1878.

6. Record of Union County Court: "*Robert Simpson* v. *Isaac Simpson et al.*, Fall Term, 1869. Judgment for want of answer, $468.80."

The summons in the case was served on Isaac and W. L. Simpson, but not on the executors of W. T. Lemond.

Robert Simpson, one of the plaintiffs, testified in his own behalf, as follows: "The above judgment was rendered on the note for $312.50, which is secured by the said mortgage to W. L. Simpson and W. T. Lemond. Fifty dollars᾽ were paid upon the said note before judgment. Nothing was paid afterwards until the mortgage sale made by W. L. Simpson and J. Q. Lemond, executors."

To this answer, and the question which elicited it, the defendants objected, on the ground that it was incompetent under section 590 of the *The Code*, as involving a transaction between the witness and deceased persons; and upon the further ground that the said note and mortgage were executed anterior to August, 1868   Objection overruled, and defendants excepted.

Witness, continuing, said: "I was at mortgage sale; S. H. Walkup bid the land off at $100; I do not know why he did not take the deed to himself. He bid it off for William Simpson, one of the trustees, who told him not to let the land go for nothing. I heard both of them say so."

The defendants then offered the following evidence:

1. Discharge in bankruptcy of W. L. Simpson, July 14th, 1873.

2. Deed from J. J. Hasty, Sheriff, to A. J. Hargett, dated April 4th, 1870, duly registered.

3. Deed from A. J. Hargett to H. P. Hargett, dated Jan. 1st (June 1st), 1870, duly registered.

4. Deed from H. P. Hargett to M. H. Simpson, dated March 27th, 1872, duly registered.

5. Deed from M. H. Simpson to E. A. Simpson, dated October 28th, 1875, duly registered.

It was admitted that E. A. Simpson was dead at the institution of this action, and that the defendant Zylphia Simpson is his widow, and the other defendants are his children, and the said Evan was the son of Isaac Simpson, the mortgagor, and that all the deeds offered in evidence by plaintiffs and defendants were, in form, fee-simple, and covered the land in dispute.

A. J. Hargett and H. P. Hargett testified respectively that, after their purchase of the land in dispute, Isaac Simpson remained in possession, by their consent and under them, till the sale of the land to M. H. Simpson on the 27th of March, 1872.

Zylphia Simpson testified, that after the sale of the said land to M. H. Simpson, the said Isaac Simpson remained in possession, under said M. H. Simpson, until his death in 1875; that after the death of the said Isaac, the said M. H. Simpson sold the land to Evan A. Simpson, who took immediate possession, and held and cultivated the same till his death, since which time the defendants have possessed and cultivated said land up to the commencement of this suit, March 22d, 1879.

W. C. Ogburn testified as follows: "I don't remember being at mortgage sale; did not bid the land off, nor authorize any one to do so for me. W. L. Simpson came to me and got me to let the deed be made to me. Think he mentioned to me what the land was bid off at. Don't remember paying him anything."

H. M. Houston testified that he was assignee in bankruptcy of W. C. Ogburn. The assignment by the register in bankruptcy of the effects of W. C. Ogburn, made in the Fall of 1876, embraced the land in dispute, and was sold at bankrupt sale, and it was bid off by N. S. Ogburn for ten cents. The deed offered in evidence was made to W. C. Ogburn, May 8th, 1877.

The defendants asked the following special instructions:

1. That if the jury believe that the land in dispute was bid off at the sale made by the trustees of W. L. Simpson and J. Q. Lemond, executors, by S. H. Walkup, under an agreement between the said Walkup and said Simpson, trustee, prior to the sale, and the deed was made by said Simpson and Lemond to W. C. Ogburn, to whom the said Walkup transferred his bid, at the instance of the said Simpson, nothing passed by said sale and deed, and the jury should find the first and second issues in favor of defendants.

2. That inasmuch as there is no power of sale in the mortgage deed of Isaac Simpson, * * * and nothing has been paid by the mortgagees on account of their suretyship, the sale under the said mortgage deed passed nothing, and plaintiffs cannot recover.

3. That inasmuch as the said mortgage deed was to indemnify the said trustees, Simpson and Lemond, against a contingent loss, * * * the said trustees had no right to assign the said mortgage deed or transfer the legal estate to the land embraced therein, the said mortgage deed being a mere incident to protect the said trustees against an inchoate liability, and plaintiffs cannot recover.

4. That being an action to try title and to recover the possession of land, and more than ten years having elapsed since the rendition of the judgment in 1869, the said judgment is barred by the statute of limitations, and the plaintiffs cannot recover.

5. If the jury believe that the defendants, and those under whom they claim, have been in adverse possession of the land in dispute by known and visible lines and boundaries, and under colorable title, for seven continuous and successive years next preceding the institution of this suit, the jury should respond No to the first and second issues.

6. That, inasmuch as the sale of the said trustees, Simpson and Lemond's executors, was made on the 6th day of June, 1870, and a deed to the premises executed to W. C. Ogburn

on the same day, the relation of landlord and tenant, if it ever existed, was, by this attempted foreclosure, destroyed, and the possession of the said Isaac Simpson was thereafter adverse, in the absence of a subsequent agreement with the purchaser at said sale, or those claiming under him.

7. That, inasmuch as the note put in judgment in 1869 was executed in 1859, and the executors of W. T. Lemond were not served with the summons in said suit prosecuted to judgment in 1869, the presumption is that said note has been paid.

8. More than ten years having elapsed since the alleged default in said mortgage, the said mortgage is presumed to have been satisfied, and the land therein described is presumed to have been reconveyed by the said mortgagees and those claiming under them.

His Honor refused to give the instructions asked for by the defendants, and instructed the jury that, if they believed the testimony, they would respond to the issues in favor of the plaintiffs, and thereupon proceeded to write the following responses: To the first issue, "Yes"; to the second issue, "Yes"; to the third issue, "The note has not been paid in full, and there is $300 still due, and the sureties have sustained no loss"; to the fourth issue, "No."

To the refusal to give the instructions asked, and to the instructions given, the defendants excepted.

The defendants also excepted to "the action of his Honor in writing the responses of the jury, save to the finding that the sureties had suffered no damage, in the third issue," and contended that, "under the evidence and the law, the jury should have been told that there was a presumption that the note was paid in full," but, being overruled in this, they made no point as to the amount unpaid.

There was a motion for a new trial. Motion denied, and the following judgment was rendered:

"1. That the *feme* plaintiff do recover the possession of the lands described in the complaint of the plaintiffs.

"2. That the defendants be and are declared to hold the said land as mortgagees or trustees for the payment of the said sum of $300 due the male plaintiff aforesaid.

"3. That C. M. T. McCauly be appointed commissioner to sell the said tract of land, at the court-house in Monroe, as the law provides for sales by Sheriffs, and report to the next term of this Court."

Appeal by defendants.

*Messrs. W. P. Bynum* and *P. D. Walker*, for plaintiffs.

*Messrs Covington & Adams* (by brief) and *E. C. Smith*, for defendants.

DAVIS, J.—after stating the facts: The first exception is to the sufficiency of the probate of the mortgage deed from Isaac L. Simpson. The name of the subscribing witness, as appears attached to the deed, was "Ivey L. Potter Simpson," and the certificate is that it was "proved before me by Ivey L. Potter, a subscribing witness thereto," &c. Assuming that the clerk, by mistake, or from any other cause, omitted the surname, the *factum* of the execution of the mortgage, or of its probate and registration, is not denied, and the objection was properly overruled. *Love* v. *Harbin*, 87 N. C., 249.

The second exception is to the competency of the plaintiff Robert Simpson to testify that "$50 were paid upon the said note before judgment. Nothing was paid afterwards," &c.

The mortgagor and maker of the note was dead, and we do not think that the plaintiff was a competent witness to prove, for any purpose necessary to support his action, that a payment had been made, or that none was made. They necessarily concerned "transactions" with the deceased, about which he could testify, and might testify differently, if living, and we think he was rendered incompetent as a wit-

ness for any such purpose, both by section 580 and section 590 of *The Code.*

It was in evidence (the plaintiff Robert Simpson himself testified) that a sale of the land in dispute was made to W. L. Simpson, one of the mortgagees, and J. Q. Lemond, executor of the other, and that at the sale the land was bid off by S. H. Walkup for said William L. Simpson; that he did not know why Walkup did not take the deed to himself. It was further in evidence that W. L. Simpson and J. Q. Lemond, executors, &c., executed on the 6th of June, 1870, a deed to W. C. Ogburn; that Ogburn was not at the sale, and did not bid off the land, nor authorize anyone else to bid it off for him; that W. L. Simpson, one of the mortgagees, asked him to let the deed be made to him; it was so made, and he, on February 11th, 1878, more than seven years afterwards, conveyed it to the *feme* plaintiff, and that nothing was paid. The mortgagees, for whose indemnity the deed was made, had no power under the deed to sell or foreclose the mortgage by sale, public or private, and if they had, the evidence tends strongly to show *mala fides* in the sale; that there was, in fact, no *bona fide* sale to Walkup or Ogburn, who acted for, and at the request of, the mortgagee Simpson. There appears to have been no consideration for the deed from the mortgagees to Ogburn, or from him to the *feme* plaintiff, and the evidence is sufficient to create much more than a mere suspicion of collusion between the mortgagees and plaintiffs, and the defendant was entitled, substantially, to the first instruction asked. We say "substantially," because there is no direct evidence that Walkup transferred his bid to Ogburn at the instance of Simpson, though there is no evidence of any bid except by Walkup.

If the mortgagees had power under the mortgage to sell, the effect of their deed of June 6th, 1870, if made fairly and without collusion, would be to foreclose the mortgage and the relation of mortgagor and mortgagee ceased, but if they

had no authority to sell, and we think they had none, the legal title remained in them, and the land could only be subjected, whether as a security for the payment of the debt to the male plaintiff, or in exoneration of the sureties thereto, by an action to foreclose the mortgage, and the *feme* plaintiff cannot recover possesssion of the land in this action.

But it is insisted that the deeds from the mortgagees to Ogburn, and from Ogburn to the *feme* plaintiff, if not valid to pass the title to her, conveyed at least the naked legal title, and, as the land is security for the payment of the male plaintiff's debt, this may be treated as an action for foreclosure to pay it.

Assuming that the mortgagors could have transferred to the male plaintiff the legal title held by them in exoneration of their liability, and that this would have put the naked legal title in him, and that, having the equity to have the land applied to the payment of his debt, he might bring an action in his own name, without joining the mortgagees against the mortgagor to foreclose (we do not say that this could be done), yet, that certainly could not be done in this action.

There is no legal title of any sort in the male plaintiff, and this action is not brought to foreclose. On the contrary, it is brought to recover the possession of the land only, and that, not upon any claim of title by the male plaintiff, but upon the claim of title of the *feme* plaintiff, and the only relief demanded is the possession of the land and damages for retention, and not to foreclose the mortgage for the payment of the male plaintiff's debt, or for the exoneration of the sureties thereto, who are not parties to this action; and besides the claim of the defendants set up in their answer that, if not entitled to the land, they are entitled to have it sold under the mortgage to pay any sum that may be due, etc., is denied by the replication. No such cause of action is alleged by the complainant, and there could be no

107—36

such recovery as that to foreclose, etc., in this action.   *Willis* v. *Branch*, 94 N. C., 142, and cases there cited.

The judgment is both for recovery of possession by the *feme* plaintiff, and that the defendants be declared mortgagees, or trustees, etc., and that the land be sold.   This is a judgment for both of the plaintiffs, in double and conflicting aspects, and cannot be sustained.

We think there was, in several aspects of the case, evidence that should have been passed upon by the jury, under instructions from the Court, and that there was error in refusing the first and fifth prayers for instruction, and the charge, as given in the judgment rendered, and we need not consider whether if, in an action brought by the male plaintiff to subject the land as a security for the payment of his debt, the statute of presumptions would bar, and whether, in such an action, the mortgagees would be necessary parties, nor is it necessary to consider the other exceptions in the case on appeal.

Error.