### C. W. MYERS v. S. W. ALLSBROOK.

(Filed 4 February, 1949.)

**1. Pleadings § 3a—**

> The right to recover is determined by the allegations of the complaint.

**2. Contracts § 5—**

> Forbearance to exercise legal rights is sufficient consideration for a promise given to secure such forbearance even though the forbearance is in respect to the liability of a third person rather than that of the promisor.

**3. Frauds, Statute of, § 5—**

> The fact that the promise to answer for the debt or default of another is supported by consideration does not take such promise out of the statute of frauds when the original obligation is not extinguished by the new promise and the consideration for the promise moves to the original debtor and not to the promisor.

**4. Same—Complaint held not to allege that consideration for promise moved to promisor and nonsuit was proper.**

> The evidence was to the effect that a check given by an automobile retailer to plaintiff in payment of a car was returned unpaid, that plain-

tiff went to the debtor's place of business and that defendant, who was the debtor's brother, and who was handling the business during debtor's illness, told plaintiff to redeposit the check in about two weeks and that if it were not then paid by the bank he would send plaintiff a cashier's check for part and a personal check for the balance. It was alleged that after the debtor's death the defendant and two others purchased the business, but it was not alleged that at the time of the promise defendant contemplated purchasing the business or any interest therein. *Held:* While the evidence is sufficient to justify a finding that defendant personally promised to pay the check if his brother's funds were insufficient, and plaintiff's forbearance to take any action on the check for a period of two weeks was sufficient considera- tion for the promise, there is no allegation that the defendant made the promise to obtain any personal advantage from such forbearance, and therefore the promise comes within the statute of frauds, G.S. 22-1, and defendant's motion to nonsuit was properly allowed.

**5. Same—**

   While the statute of frauds does not apply to an oral promise to pay the debt of another out of money or property which the debtor has placed in the hands of the promisor for the purpose of paying the debt, evidence tending to show that the debtor entrusted certain funds to the promisor for the purpose of carrying on the debtor's business, without evidence that he entrusted the funds for the specific purpose of paying debtor's debts, is insufficient to bring the promise within this rule.

APPEAL by plaintiff from *Edmundson, Special Judge,* at April Term, 1948, of FORSYTH.

The complaint stated a cause of action against the defendant for breach of a contract to pay the plaintiff a check for $4,175 originally issued to plaintiff by a third person, Joe Allsbrook, trading as "City Auto Service." The answer denied the making of the contract; and specifically pleaded the statute of frauds as contained in G.S. 22-1 as a defense.

To sustain the complaint, the plaintiff presented testimony tending to establish the matters set out below.

Before the events giving rise to this litigation, the plaintiff, C. W. Myers, a wholesaler of motor vehicles at Winston-Salem, North Carolina, had many business dealings with Joe Allsbrook, who retailed automobiles and automobile accessories and supplies in Scotland Neck, North Caro- lina, under the assumed name of "City Auto Service."

On 26 April, 1947, the plaintiff sold Joe Allsbrook a Dodge for $2,275 and a Chevrolet and a Ford for $4,175, taking therefor separate checks for such sums drawn by Joe Allsbrook in his trade name of "City Auto Service" on the Bank of Halifax at Scotland Neck. It was expressly agreed that the sale of the Chevrolet and Ford was a cash transaction, but on 14 May, 1947, the check for $4,175 covering the sale price of those cars was returned to the plaintiff "unpaid." About the same time, the plaintiff learned that the Bank of Halifax had declined to honor the check for $2,275.

MYERS *v.* ALLSBROOK.

On 16 May, 1947, plaintiff went to Scotland Neck "to try to get either the money or the cars back." Upon arrival there, he ascertained that Joe Allsbrook was seriously ill in a hospital, and that his brother, S. W. Allsbrook, the defendant herein, was actively managing the business of "City Auto Service" for Joe Allsbrook "while he was away."

The plaintiff did not find any of the vehicles he had sold to Joe Allsbrook. He was informed by defendant, however, that "one of the cars had been sold a day or two before" and "the money was deposited in the bank."

Defendant advised plaintiff that he "was looking after the business for his brother," who was in "bad shape," and that he would pay the $2,275 check immediately, if the plaintiff had it with him. The defendant offered to sell the plaintiff "tires or batteries or anything he had there to pay the $4,175 check that day," but the plaintiff did not avail himself of this proposition.

Upon being apprised that the $2,275 check was in transit unpaid between the Bank of Halifax and the plaintiff's bank in Winston-Salem, the defendant told the plaintiff "to return such check and it would be paid" at once. He asked plaintiff to put the check for $4,175 "back in the bank in about two weeks" and assured plaintiff "that when the $4,175 check came in . . . he'd pay all of it or he'd send plaintiff a cashier's check for part of it and a personal check wrote on the special account for the rest of it." The defendant showed the plaintiff a "bank statement, where he had about sixteen or seventeen thousand dollars at the time, but said that was on a special account."

The defendant called the Bank of Halifax by telephone and told the officers of the bank in the presence of plaintiff to pay the $2,275 check immediately upon its return, and to pay the $4,175 check in full when it was again presented "if the money was in there to pay the whole check."

The defendant told the plaintiff that he "owned two or three good farms, and ten or twelve houses in Scotland Neck" and said: "Don't worry about that $4,175 check. I will personally see that that is paid."

All communications and transactions between plaintiff and defendant were oral.

The check for $2,275 was duly paid on its second presentation to the Bank of Halifax. Plaintiff held the $4,175 check for "ten days or two weeks and had it deposited again for collection." On 31 May, 1947, it was returned to plaintiff unpaid the second time.

The drawer, Joe Allsbrook, died 6 June, 1947, and thereafter plaintiff filed a verified claim for the amount of the $4,175 check with the administrator. But the plaintiff has "never received anything from anybody on the check." Subsequent to the death of Joe Allsbrook, the defendant

and two other persons purchased from his administrator the business known as "City Auto Service."

In addition to the evidence stated above, the plaintiff gave this testimony: "Mr. Allsbrook told me that he and his brother and some other gentlemen had signed a note for $25,000 at the bank." The record does not explain the relation of this particular evidence to the controversy. Counsel for plaintiff indulge in the speculation that it reveals the source of the "special account" mentioned at the trial. No reference is made to the note or to anything connected therewith in any of the pleadings.

The legal battle between the parties on the trial was waged around the question as to the effect of the evidence, the defendant contending that in any event it was not sufficient, under the statute of frauds, to bind him. The court was of this view, and entered a compulsory judgment of nonsuit under G.S. 1-183 at the close of plaintiff's evidence. The plaintiff excepted to this ruling, and appealed.

*Felix L. Webster and H. Bryce Parker for plaintiff, appellant.*

*Deal & Hutchins, Weston P. Hatfield, and Wade H. Dickens for defendant, appellee.*

ERVIN, J. The defendant asserts that the nonsuit might well be sustained on the ground that the evidence shows that in his transactions with plaintiff he acted solely as agent for Joe Allsbrook, a disclosed principal; that any promise he may have made to plaintiff to pay the check for $4,175 was simply a promise to make payment of a debt of his principal out of assets of his principal subject to his control as agent; and that both he and the plaintiff understood that he did not undertake to assume any obligation of his principal as a personal liability. *Way v. Ramsey,* 192 N. C. 549, 135 S. E. 454; *Davis v. Burnett,* 49 N. C. 71, 67 Am. Dec. 263; *McCall v. Clayton,* 44 N. C. 422; *Meadows v. Smith,* 34 N. C. 18. To be sure, the testimony is susceptible of this construction.

Interpreted most favorably for plaintiff, however, the evidence is sufficient to justify an alternative finding by a jury that the defendant promised to pay to plaintiff the pre-existing obligation of Joe Allsbrook to plaintiff evidenced by the $4,175 check in consideration of the plaintiff extending the time for the payment of such obligation for "about two weeks" and refraining from taking legal action against Joe Allsbrook or his property upon such obligation during such period. But since the promise shown by this view of the testimony was made to plaintiff by defendant by word of mouth only, we are confronted on this appeal by the determinative question of whether the promise constituted "a special promise to answer the debt, default or miscarriage" of Joe Allsbrook under the section of the statute of frauds prescribing that "no action shall

be brought whereby . . . to charge any defendant upon a special promise to answer the debt, default or miscarriage of another person, unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party charged therewith or some other person thereunto by him lawfully authorized." G.S. 22-1.

In our opinion, this question must be answered in the affirmative as a matter of law under the pleadings and the testimony. It is to be noted that the creation of the debt of Joe Allsbrook to plaintiff antedated the making of the promise of the defendant to plaintiff. Since there was neither allegation nor proof of any agreement that the debt was extinguished by the promise, the liability of Joe Allsbrook to the plaintiff remained. Indeed, the language used by the defendant to plaintiff clearly manifested that the defendant had no intent to assume any independent duty of payment making the debt his own irrespective of the liability of Joe Allsbrook. His promise to the plaintiff was, in effect, that he would personally see that the check in controversy was paid in the event the assets of Joe Allsbrook proved insufficient to satisfy it. Thus, he simply superadded his promise to the antecedent obligation of Joe Allsbrook, rendering it collateral to the same.

It is elementary that the plaintiff must recover, if he recovers at all, on the cause of action made out by his complaint. *Barron v. Cain,* 216 N. C. 282, 4 S. E. (2) 618; *McCollum v. Chisholm,* 146 N. C. 18, 59 S. E. 160; *Simpson v. Simpson,* 107 N. C. 552, 12 S. E. 447; *Willis v. Branch,* 94 N. C. 142; *Melvin v. Robinson,* 42 N. C. 80. The complaint contains no allegation to the effect that the promise of the defendant was made for his own benefit or that he had any personal, immediate, or pecuniary interest in the transaction. While it is alleged "that after the death of Joe Allsbrook, the defendant and two other persons bought the business of Joe Allsbrook known as City Auto Service, and the defendant and the two other persons are continuing the operation of said business," it is nowhere suggested either in the pleadings or in the testimony that the defendant ever contemplated purchasing the business or any interest therein at any time during the life of Joe Allsbrook.

The only consideration for the oral promise of the defendant alleged in the complaint and shown by the evidence was the agreement and act of the plaintiff extending time for the payment of the check of Joe Allsbrook for "about two weeks" and forbearing to take legal action against Joe Allsbrook or his property upon such check during that period.

Undoubtedly, a forbearance to exercise legal rights is a sufficient consideration for a promise made on account of it in the general law of contracts. *Chemical Co. v. McNair,* 139 N. C. 326, 51 S. E. 949; *Lowe v. Weatherley,* 20 N. C. 353. This is true even when the forbearance

is in respect to the liability of a third person rather than that of the promisor. *Bank v. Bridgers,* 98 N. C. 67, 3 S. E. 826, 2 Am. S. R. 317.

But the mere fact that there may be a new consideration for the oral promise of a defendant to pay the subsisting debt of another is not sufficient of itself to take the promise out of the prohibition of the statute of frauds. "To say that any consideration will take a promise based thereon out of the statute is to make the statute useless. For if there is no consideration the promise is invalid without the statute. The statute is aimed at what were valid contracts; that is to say, it makes invalid contracts not in writing which would otherwise have been valid." *Martin v. Harrington,* 174 Mo. A. 707, 161 S. W. 275. See, also, in this connection, *Stanly v. Hendricks,* 35 N. C. 86. Here, the forbearance of the plaintiff was a benefit to the debtor, Joe Allsbrook, and a detriment to the plaintiff. Nevertheless, it was not beneficial to the defendant. This statement is applicable to this phase of the case: "A promise to a creditor to pay his debtor's debt, the debtor not being discharged by the arrangement, in consideration of the creditor giving time to the debtor, or forbearing to sue him, or staying, or discontinuing a suit against him, or forbearing to levy an attachment or execution, on the debtor's property, or suspending proceedings on an execution against the debtor, the lien of the execution remaining unimpaired, or forbearing to evict the debtor from premises leased by him, or to take out administration on the estate of the original debtor, is within the statute of frauds for the reason that such considerations are not regarded as directly beneficial to the promisor. The rule is different where the creditor's forbearance results in a direct benefit to the promisor, which was the object of the promise, as where the promisor has an interest in the property which will be prejudiced by the bringing or continuing of the adverse proceedings. Mere forbearance without benefit to the promisor therefrom may be a sufficient consideration to uphold the promise as a contract, although it may be insufficient to take it out of the operation of the statute." 27 C. J., Statute of Frauds, section 33.

This passage is in complete accord with *Peele v. Powell,* 156 N. C. 553, 73 N. E. 234, and *Gennett v. Lyerly,* 207 N. C. 201, 176 S. E. 275, where the relevant rules are thus stated. "Where the promise is for the benefit of the promisor, and he has a personal, immediate, and pecuniary benefit in the transaction, or where the promise to pay the debt of another is all or part of the consideration for property conveyed to the promisor, or is a promise to make good notes transferred in payment of property, the promise is valid although in parol. If, however, the promise does not create an original obligation, and it is collateral, and is merely superadded to the promise of another to pay the debt, he remaining liable, the promisor is not liable, unless there is a writing; and this is true whether made at the time the debt is created or not."

We have not overlooked the contention of the plaintiff that this case is governed by the principle that the statute of frauds does not embrace an oral promise to pay the debt of another out of money or property which the debtor has placed in the hands of the promisor for the purpose of paying his debts. *Dale v. Lumber Co.,* 152 N. C. 651, 68 S. E. 134, 28 L. R. A. (N. S.) 407; 49 Am. Jur., Statute of Frauds, section 87; 37 C. J. S., Statute of Frauds, section 18. The complaint does not present this theory. But even if it did, the plight of the plaintiff would not be improved. According to the testimony, Joe Allsbrook did not put the so-called "special account" or any other effects in the hands of the defendant for the specific purpose of paying his debts. He entrusted his funds and property to defendant to the end that defendant, acting as his agent, might carry on his business.

The considerations stated require an affirmance of the compulsory judgment of nonsuit. It is so ordered.

Judgment affirmed.