BRANCH BANKING AND TRUST COMPANY (FORMERLY INDEPENDENCE NA-
TIONAL BANK) v. KENYON INVESTMENT CORPORATION; GARSON RICE;
THOMAS A. ROBINSON, SUBSTITUTE TRUSTEE; AND SUNSTATES COR-
PORATION .

No. 8427SC1033

(Filed 16 July 1985)

1. **Mortgages and Deeds of Trust § 15.1— priorities—party assuming principal
obligation and giving second mortgage**

    Independence National Bank, a first mortgagee, held legal title to the sub-
    ject land and whatever rights Kenyon, the second mortgagee, had in the prop-
    erty by virtue of its deed of trust were subject to the deed of trust held by
    Independence where Independence held a first mortgage, Kenyon a second,
    and Gardner, who had assumed the principal obligation from the initial pur-
    chaser, held the beneficial title or equity of redemption.

2. **Mortgages and Deeds of Trust § 15.1— purchase of mortgagor's interest by
second mortgagee—mortgagor personally liable—first mortgagee may declare
balance due**

    Where Kenyon, the holder of a second mortgage, foreclosed and pur-
    chased the mortgagor's (Gardner's) interest and there was no agreement of
    record for Kenyon to assume the principal debt, Kenyon took the land subject
    to the first mortgage and had no personal liability for the debt. Gardner re-
    mained personally liable and Independence National Bank, under the terms of
    its first mortgage, could refuse to allow assumption and could declare the
    balance due and payable.

3. **Mortgages and Deeds of Trust § 15.2— assumption of first mortgage by sec-
ond mortgagee after foreclosure of second mortgage**

    A second mortgagee (Kenyon) assumed personal liability on the mortgage
    debt and the debt was not discharged when the principal obligor was dis-

1

charged in bankruptcy where there had been a transfer of equitable title to the second mortgagee (Kenyon) which, by operation of law because the deed was silent, was subject to the first deed of trust held by Independence National Bank; there was a collateral agreement between Kenyon and Independence National Bank whereby Kenyon undertook to pay the preexisting mortgage debt on the property in return for which Independence agreed not to foreclose; and, although the letter stated the agreement was not a formal assumption, the agreement evidenced by the letter made a disposition of Kenyon's and Independence's rights and liabilities, there was consideration in Independence's forbearance of foreclosure and agreement to relinquish its option to accept or refuse prepayment, and there was evidence that the parties thought a valid agreement existed in that Kenyon made payments according to the agreement and paid Independence for release of its lien on a part of the land. A provision in the agreement that it did not constitute a formal assumption merely insured that Independence would be able to sue Gardner, the principal obligor, for any deficiency remaining after a foreclosure. G.S. 45-45.1.

**4. Mortgages and Deeds of Trust § 24— foreclosure—principal obligor discharged in bankruptcy—bankruptcy settlement**

Branch Banking and Trust, the successor in title to the first mortgagee (Independence National Bank), was entitled to summary judgment where the relief it sought was a court order for foreclosure of the first deed of trust, the second mortgagee (Kenyon) had assumed the indebtedness with the mortgagor (Gardner) being liable for any deficiency remaining after foreclosure, Gardner had been released by Independence in a bankruptcy settlement, and Kenyon had agreed in its bankruptcy settlement to assume any liability Gardner "may have had or now have" on the first mortgage. Kenyon was primarily liable for the full amount and BB&T could either sue on the note or foreclose on the deed of trust upon default.

APPEAL by plaintiff from *Gaines, Judge.* Judgment entered 10 July 1984 in Superior Court, GASTON County. Heard in the Court of Appeals 8 May 1985.

In this civil action plaintiff Branch Banking and Trust Company seeks to foreclose on a deed of trust on certain land in which defendant trustee Thomas Robinson, defendant Sunstates Corporation through its predecessor in interest, defendant Kenyon Investment Corporation, and Garson Rice, claim a competing ownership interest. The pertinent facts may be stated as follows:

On 7 June 1977, Gardner Land Co. sold and deeded certain land to Sonny Hancock Pontiac. Hancock executed a promissory note (Hancock note) in the amount of $152,000 in favor of Gardner Land Co. and secured the note with a deed of trust (Hancock deed of trust) to O. Max Gardner, III, as trustee for Gardner Land

Company. On 1 December 1977, Hancock conveyed the land to Max Gardner in his personal capacity. With the consent of Gardner Land Company, Max Gardner assumed liability on the Hancock note which was still secured by the Hancock deed of trust. Max Gardner held the Hancock deed of trust in his trustee capacity for Gardner Land Co. until 15 February 1978, when John Mull Gardner was substituted as trustee.

On 24 August 1978, Max Gardner and his wife borrowed $500,000 from Kenyon Investment Corporation and Garson Rice and executed a promissory note (Kenyon note) for that amount. The note was secured in part by a deed of trust to Kenyon and Rice on the land that Gardner had purchased from Hancock Pontiac (Kenyon deed of trust). The Kenyon note recited that its security was subject to the prior Hancock deed of trust.

On 6 October 1978, Gardner Land Co. assigned all of its right, title and interest in the Hancock note and deed of trust to Independence National Bank, predecessor in interest to plaintiff Branch Banking and Trust Co. Max Gardner, as owner of the subject property, consented to the assignment. On 24 January 1979, the Gardners defaulted on the Kenyon note. Kenyon and Rice foreclosed on the Kenyon deed of trust on 20 March 1979. Kenyon and Rice purchased the land at the foreclosure sale for $250,000. They received a trustee's deed to the property on 27 June 1979.

By letter dated 26 June 1979, Independence National Bank indicated to Kenyon that it would not permit Kenyon to assume the Hancock indebtedness to which the property was still subject. The bank demanded payment in full on the Hancock note on 1 July 1979, the date of the next annual installment. From then until 19 July 1979, the parties engaged in negotiations concerning the Hancock note and deed of trust. 1 July 1979 passed with neither the annual installment nor the balance due on the note being paid.

In a letter to Kenyon Investment Corporation dated 19 July 1979, the bank agreed not to foreclose on the Hancock deed of trust so long as Kenyon kept the loan in a current status and cured the existing default by payment of the 1 July 1979 installment. The letter also contained the following paragraph:

Third, both parties agree that acceptance of payments made by Kenyon to the bank does not constitute a formal loan assumption by Kenyon, and that the bank's rights as lienholder are in no way diminished nor altered in the event of future default, including it's [sic] remedies against Mr. and Mrs. Gardner.

The registered letter was received by Kenyon Investment Corporation and signed by Harold V. McCoy, president of Kenyon, with the notation, "Accepted this 27th day of July, 1979." Thereafter, payment of $20,773.33 was made by Kenyon to cure the existing default and to keep the loan current.

On 24 August 1979, Kenyon and Rice filed an action against the Gardners for the deficiency that remained on the $500,000 Kenyon note after the foreclosure sale. The Gardners answered and counterclaimed for damages arising from alleged irregularities in the foreclosure proceeding. Independence National Bank filed a claim against the Gardners based on some promissory notes unrelated to the present action. Max Gardner filed a separate action in another county based on the same notes.

On 14 December 1979, Max Gardner filed a voluntary petition for bankruptcy under Chapter 11 of the federal bankruptcy law. All pending litigation involving Max Gardner was removed to U.S. Bankruptcy Court for the Western District of North Carolina and restyled as "adversary proceedings." On 18 December 1979, Gardner filed an adversary proceeding against Kenyon and Rice in which he sought to have the foreclosure sale declared invalid because of alleged irregularities.

On 13 May 1980, the adversary proceeding between Independence Bank and the Gardners was settled. The settlement agreement contained a general release which included the following language:

Independence does hereby and for its successors and assigns release, acquit, and forever discharge Gardner, Mrs. Gardner and their heirs, executors and administrators from any and all claims, actions, demands or rights to or for any damages, costs, or compensation whatsoever, which Independence now has or which may hereafter accrue on account of or in any way growing out of all present indebtedness of Gardner and

Mrs. Gardner to Independence, including specifically the indebtedness represented by the promissory notes which are exhibits to this Agreement, it being the intention of the parties to effect a full and complete settlement among the indicated parties according to the terms herein.

On 31 July 1980, the adversary proceeding between the Gardners and Kenyon and Rice was settled. The only items involved in that settlement agreement were the Kenyon note and deed of trust. In language substantially similar to that quoted above, the Gardners were released from their obligation to Kenyon and Rice on the Kenyon note. The agreement recited that the property given as security for the 1978 loan "was free and clear of all mortgages, pledges, liens, charges and other encumbrances *except . . .* a first Deed of Trust to Gardner Land Company, Inc. (which was subsequently sold and assigned to Independence National Bank) in the face amount of $152,000.00." (emphasis in original). Kenyon and Rice entered into a stipulation and agreed to assume responsibility for the indebtedness as follows:

Kenyon and Rice expressly agree to assume any and all liabilities that [the Gardners] may have had or now have under the Promissory Note secured by the said Deed of Trust and further agree to hold [the Gardners] harmless should Independence National Bank ever seek to take any action against them as a result of their having executed any Note or other Loan Documents secured by the said Deed of Trust filed against a portion of the subject property.

Both settlement agreements were approved by the Bankruptcy Court.

Kenyon and Rice made the 1 July 1980 payment on the Hancock note. On 10 October 1980, they paid Independence National Bank $15,000 on the principal indebtedness on the Hancock note. In return, the bank released its lien on a portion of the property. This was done to facilitate the transfer by Kenyon and Rice of clear title to a tract of land which included the portion of the subject property released by the bank. The tract was sold as a package to a commercial developer and clear title was required for the transaction to occur.

The next annual installment on the Hancock note was due on 1 July 1981 but was not paid. Kenyon and Rice refused the demand of plaintiff Branch Banking and Trust Co. (BB&T) with whom Independence National Bank had merged, for payment. On 2 December 1982, BB&T filed an action seeking to foreclose on the Hancock deed of trust in order to satisfy the indebtedness remaining on the Hancock note. Meanwhile, Kenyon had merged with Sunstates Corporation, a named defendant. Thomas A. Robinson, also a named defendant, had been substituted as trustee under the Hancock deed of trust.

On 13 February 1983, defendants answered the complaint, denying any obligation with respect to the Hancock indebtedness. Defendants also counterclaimed seeking to have BB&T's lien removed as a cloud on the title. BB&T responded and, in February 1984, both sides moved for summary judgment. Summary judgment was granted in favor of defendants. BB&T's motion for summary judgment was denied and BB&T appealed.

*Mullen, Holland, and Cooper, by Raboteau T. Wilder, Jr. and William E. Moore, Jr., for plaintiff-appellant.*

*Tuggle, Duggins, Meschan and Elrod by David F. Meschan and Henry B. Mangum, Jr. for defendant-appellees.*

EAGLES, Judge.

The question presented by this appeal is whether BB&T may foreclose on the deed of trust to the real property acquired by Kenyon and Rice from the Gardners through foreclosure. For the reasons set out below, we hold that BB&T has the right to foreclose on the land and that they were entitled to summary judgment in their favor.

I

[1] Prior to the foreclosure by Kenyon and Rice (hereafter collectively referred to as Kenyon), Independence National Bank (Independence) held a recorded deed of trust to the property as security for a $152,000 promissory note on which Max Gardner was the principal obligor, having assumed the obligation from Sonny Hancock. Gardner Land Company, Independence's predecessor in title to the deed of trust, consented to the assumption. Kenyon held a second deed of trust on the same land as partial

security for a $500,000 debt owed by Max Gardner and his wife. The second deed of trust recited specifically that it was *subject to* the first deed of trust.

In this situation, the relationship of the parties with respect to one another is well-established. Independence held legal title to the land and Gardner held the beneficial title or an equity of redemption. *Riddick v. Davis*, 220 N.C. 120, 16 S.E. 2d 662 (1941). As between Gardner and Hancock (the original mortgagor), Gardner was the principal debtor on the note held by Independence and Hancock was the surety. *Keen v. Parker*, 217 N.C. 378, 8 S.E. 2d 209 (1940); *Rector v. Lyda*, 180 N.C. 577, 105 S.E. 170, 21 A.L.R. 411 (1920). The assumption agreement between Gardner and Hancock inured to the benefit of Independence, who was entitled as a third party beneficiary to maintain an action for enforcement of the agreement. *Beaver v. Ledbetter*, 269 N.C. 142, 152 S.E. 2d 165 (1967); *Baber v. Hanie*, 163 N.C. 588, 80 S.E. 57 (1913). Gardner Land Company's consent to the agreement, which was binding on Independence, recognized the principal-surety relationship between Gardner and Hancock and likewise recognized Gardner's personal liability on the note while essentially releasing Hancock. *Keen v. Parker, supra. State-Planter's Bank and Trust v. Randolf,* 207 N.C. 241, 176 S.E. 561 (1934). *See generally,* 9 N.C. Index 3d, *Mortgages,* Sections 15-15.3 (1977 and Supp. 1984); Hetrick, *Webster's Real Estate Law in North Carolina* Section 269 (rev. ed. 1981); 59 C.J.S. *Mortgages* Section 408 (1949); 55 Am. Jur. 2d *Mortgages* Section 1037 (1971).

The deed of trust held by Kenyon was, as noted above, expressly subject to the deed of trust held by Independence. Under established law, whatever rights Kenyon had in the subject property by virtue of the deed of trust would be subject to the Hancock deed of trust held by Independence. 55 Am. Jur. 2d *Mortgages* Section 1038. *See Weil v. Casey*, 125 N.C. 356, 34 S.E. 506 (1899); *Vanstory v. Thornton*, 112 N.C. 196, 17 S.E. 566 (1893) (rights of prior judgment creditors not affected by subsequent execution of mortgage in favor of third party). The nature of the interest possessed by Kenyon by virtue of the deed of trust is less clear. The Hancock note provided that no assumption would be allowed without the holder's consent. Accordingly, Kenyon, whose interest was subject to the prior mortgage, did not have a clear right to step into the shoes of the Gardners with respect to the

note in the event they succeeded to the Gardners' equitable interest in the land. While a mortgagee may not impose restrictions on the alienability of property subject to a deed of trust, the deed of trust may contain a due on sale clause that permits the mortgagee to accelerate the mortgage for the purpose of negotiating more favorable terms, such as a higher interest rate, with the transferee. *Crockett v. Savings and Loan Association*, 289 N.C. 620, 224 S.E. 2d 580 (1976). The Hancock deed of trust provided that if any of its terms or the terms of the note were violated, the note would, at the holder's option, be due and payable. Thus, Kenyon's interest in the Gardner equity would preserve for him a good bargaining position for renegotiating the mortgage terms.

## II

[2]   When the Gardners defaulted on the Kenyon note, Kenyon foreclosed and purchased the Gardners' interest at the foreclosure sale, succeeding the Gardners as the holders of equitable title. The relationship of the parties among themselves is less clear cut. The trustee's deed conveying the Gardners' interest to Kenyon is silent regarding the Hancock mortgage. There was no agreement of record between Kenyon and the Gardners for Kenyon to assume the debt. In such situations, the law deems the transferee to have taken the land subject to the prior mortgage. *See Harvey v. Knitting Company*, 197 N.C. 177, 148 S.E. 45 (1929); *Arnold v. Howard*, 29 N.C. App. 570, 225 S.E. 2d 149 (1976). Since there was no assumption of the mortgage debt incident to the transfer of the land, Kenyon had no personal liability for the debt either as to Independence or as to Gardner. *Henry v. Heggie*, 163 N.C. 523, 79 S.E. 982 (1913), and Gardner remained personally liable on the note. *Keller v. Parish*, 196 N.C. 733, 147 S.E. 9 (1929). Independence could not prevent the transfer of the land securing its note but could, under the terms of the note and the deed of trust, refuse to allow assumption of the debt and could declare the balance due and payable. *Crockett v. Savings and Loan Assoc., supra*. This they did by their letter of 26 June 1979.

Regardless of who was personally liable on the note or who held equitable title to the land, the law is clear that Independence had the right, upon default, to foreclose on the deed of trust and satisfy the debt from proceeds of the sale of the land. *McKinney*

*v. Sutphin,* 196 N.C. 318, 145 S.E. 621 (1928). *See generally,* Hetrick, *supra.*

### III

[3]   Although Independence communicated to Kenyon its intent to accelerate the debt, they entered into negotiations instead. The installment due on the Hancock note on 1 July 1979 was not paid and the mortgage, according to its terms, was in default. The negotiations between Kenyon and Independence produced an agreement that was evidenced by the 19 July 1979 letter from Independence to Kenyon. Its terms were essentially that Independence would not foreclose on the deed of trust as long as Kenyon kept the loan payments current. Kenyon also agreed to cure the existing default by payment of a lump sum of overdue principal and interest. The agreement apparently did not increase the principal amount of the debt or the rate of interest. Further, the maturation date of the mortgage was not changed. The agreement, however, did permit prepayment of the note in case of sale or development of the land by Kenyon. Prepayment was not allowed under the Hancock note without consent of the holder. The letter recites the further agreement of the parties that the acceptance of payments by Independence "does not constitute a formal loan assumption by Kenyon" and that Independence's future rights as lienholder were not diminished or altered in the event of a subsequent default.

#### a.

The relationship of the parties resulting from this agreement is, in our opinion, a key to the resolution of this appeal. The agreement resembles an assumption agreement in the obligations that it imposes upon the parties. However, one of the requisites of an assumption agreement is that the intent of the parties be clear. *Beaver v. Ledbetter, supra.* It is a general rule of contract law that the intent of the parties, where not clear from the contract, may be inferred from their actions. This general rule applies to transfers of land so that a transferee's intent to assume the mortgage debt may be implied from the actions of the parties. 59 C.J.S. *Mortgages* Section 406 Osborne, Nelson, Whitman, *Real Estate Finance Law* Section 5.8 (1979). Though we find no binding precedent, at least one authority has indicated that this consequence may be avoided by specifically providing in the instru-

ment that the agreement is *not* an assumption. Osborne et al., *supra*, Section 5.8.

Kenyon argues that the language in their agreement indicates clearly that no assumption was intended and that no personal liability attached to them by virtue of the agreement. This being so, they argue that Independence's subsequent release (in the Bankruptcy Settlement Agreement of 13 May 1980) of Max Gardner's obligation on the note that was secured by the deed of trust had the effect of satisfying the debt, entitling Kenyon to cancellation of the deed of trust thereby uniting legal and equitable title in Kenyon. In support of this argument, Kenyon relies on the well established rule that satisfaction of a debt secured by a deed of trust entitles the holder of the equity of redemption to cancellation of the deed of trust. *Walston v. Twiford*, 248 N.C. 691, 105 S.E. 2d 62 (1958); *Dobias v. White*, 240 N.C. 680, 83 S.E. 2d 785 (1954). *See generally*, 9 N.C. Index 3d *Mortgages* Section 17; Hetrick, *supra*, Section 284. The general rule is that release or forgiveness of a secured debt has the same effect as satisfaction of the debt. 55 Am. Jur. 2d *Mortgages* Section 462.

b.

BB&T argues that even if the agreement does not constitute a formal assumption, it nevertheless evidences the clear intention of the parties that Kenyon assume the obligation represented by the Hancock note and secured by the Hancock deed of trust. BB&T argues that the intent of the parties is not only evident from the letter, but also from Kenyon's subsequent actions in compliance with the agreement: the payment of $15,000 for the partial release, and the provision in the Bankruptcy Settlement Agreement that Kenyon would assume liability for the Hancock debt and hold the Gardners harmless in any action instituted against them by Independence respecting the Hancock mortgage.

c.

Although not a formal assumption, the agreement between Kenyon and Independence evidenced by the letter makes a disposition of their rights and liabilities with respect to one another and to the Gardners. So far as our research can determine, the result of the foregoing transactions is without precedent in the jurisprudence of this state. There was a transfer of equitable title

to Kenyon which, by operation of law because the deed was silent, was subject to the Hancock deed of trust. There was also a collateral agreement between the parties, detailed above, whereby Kenyon undertook to pay the preexisting mortgage debt on the property transferred in return for which Independence agreed not to foreclose on the mortgage in default.

The courts of other jurisdictions have confronted similar situations and the following general rule has evolved in the reported cases: Where a transferee takes an equity of redemption subject to a prior deed of trust, but does not assume the grantor's obligation on the note secured by it, the grantor occupies the position of a surety. In the event of a valid agreement between the mortgagee and the transferee to pay the note, the grantor is discharged from any personal obligation to the extent of the value of the land transferred. *See e.g., Shine v. Washington Loan Co.,* 112 Ga. App. 827, 146 S.E. 2d 371 (1965); *North End Savings Bank v. Snow,* 197 Mass. 339, 83 N.E. 1099 (1908); *McFarlane v. Melson,* 323 Mo. 977, 20 S.W. 2d 63 (1929); *Hulin v. Veatch,* 148 Ore. 119, 35 P. 2d 253, 94 A.L.R. 1319 (1934); *Singer-Fleischaker Royalty Co. v. Whisenhunt,* 402 P. 2d 886 (Okla. 1964). *See generally* 55 Am. Jur. 2d *Mortgages* Section 1117; *Annot.* 94 A.L.R. 1329 (1935); 59 C.J.S. *Mortgages* Section 401(b). The cases hold generally that the agreement to pay the debt, if supported by consideration, stands on its own and that the mortgagee may recover either by suing the transferee on the note or by foreclosing on the deed of trust. *See Annot.* 94 A.L.R. 1329 at 1334. *E.g., Person v. Plough,* 174 Wash. 160, 24 P. 2d 591 (1933). The effective result is a *de facto* assumption of the mortgage debt by the transferee of the equitable interest.

Though we have found no North Carolina cases directly on point, G.S. 45-45.1 sets forth the following general rule:

(3) Whenever real property which is encumbered by a mortgage or deed of trust is sold expressly subject to the mortgage or deed of trust, but the grantee does not assume the same, and thereafter the mortgagee or secured creditor under the deed of trust makes a binding extension of time of the mortgage or deed of trust, the mortgagor or grantor of the deed of trust is released to the extent of the value of the property at the time of the extension agreement.

BB&T argues that the statute applies to and controls the situation before us. That argument fails because the transfer to Kenyon by the trustee's deed was not *expressly* subject to the Hancock deed of trust. Nevertheless, we think that the result required by the statute, in cases where it does apply, is the proper result in cases like this one where the transfer of equitable title is subject to a prior deed of trust by operation of law.

d.

The question remaining, then, is whether the agreement evidenced by the letter contains a valid and enforceable promise by Kenyon to pay the mortgage debt which would survive the subsequent release in bankruptcy of the Gardners' obligation. Because of the similarity between this agreement and a formal assumption agreement, we think that the criteria for determining the validity of assumption agreements are relevant here.

The letter evidences an agreement that is collateral to the conveyance but clearly separate from it and not contemporaneous. In order to be valid and binding, Kenyon's promise to pay must be supported by some new consideration, the earlier conveyance of the equitable interest from the Gardners not being sufficient. 59 C.J.S. *Mortgages*, Section 409. Though there are cases to the contrary, *e.g.*, *Citizens Permanent Savings and Loan v. Rampe*, 68 App. Div. 556, 74 N.Y.S. 192 (1902), mere forbearance by a mortgagee of his right to declare the balance on a note due and payable is not sufficient consideration to support a separate, collateral agreement to pay a note. *E.g.*, *Alsobrook v. Taylor*, 181 Ga. 10, 181 S.E. 182 (1935); *Adler v. Berkowitz*, 254 N.Y. 433, 173 N.E. 574 (1930); *Schafer v. Seller*, 156 Ore. 16, 64 P. 2d 1334 (1937). *See generally, Annot.*, 94 A.L.R. 1329 (1935); 59 C.J.S. *Mortgages*, Section 401. Generally, an actual extension of the maturity date of the mortgage without the knowledge or consent of the mortgagor is sufficient consideration for the transferee's promise to pay the underlying debt. *E.g.*, *Conway Savings Bank v. Vinick*, 287 Mass. 448, 192 N.E. 81 (1934); *Person v. Plough, supra. See generally, Annot.*, 94 A.L.R. 1329, 1334-35 (1935); 55 Am. Jur. 2d *Mortgages*, Sections 1069, 1117; 59 C.J.S. *Mortgages*, Section 401(b). We note further that G.S. 45-45.1(3) (quoted *supra*), in the cases to which it applies, also contemplates an extension.

Applying principles of contract law, however, the important consideration in determining whether a promise is enforceable is whether it is merely a naked promise or whether it is part of an agreement that stands on its own as a contract. *See Annot.,* 94 A.L.R. 1329 (1935); 3 N.C. Index 3d *Contracts* Section 4 (1976). Regarding the adequacy of forbearance as consideration, our Supreme Court has said:

> It is not necessary that the promisor receive consideration or something of value himself in order to provide the legal consideration sufficient to support a contract. Forbearance to exercise legal rights is sufficient consideration for a promise given to secure such forbearance even though the forbearance is for a third person rather than that of the promisor. *Myers v. Allsbrook,* 229 N.C. 786, 51 S.E. 2d 629 (1949). In a guaranty contract, a consideration moving directly to the guarantor is not essential. The promise is enforceable if a benefit to the principal debtor is shown or if detriment or inconvenience to the promisee is disclosed. 38 Am. Jur. 2d, Guaranty Section 43, p. 1046.

*Investment Properties v. Norburn,* 281 N.C. 191, 196, 188 S.E. 2d 342, 345 (1972). Based on this precedent, forbearance is adequate consideration for Kenyon's promise to pay. Even if we were to follow the general rule and hold that mere forbearance is not adequate, we think that under the circumstances of this case, there is other consideration that is adequate to support Kenyon's promise to pay the mortgage debt and make it enforceable. This case differs from the usual case because at the time Independence and Kenyon reached their agreement the Hancock mortgage was already in default. Under the terms of the Hancock deed of trust, upon Independence's demand the balance on the note was due and payable on 1 July 1979. No payment was made and the default was not cured within the fifteen days allowed under the terms of the deed of trust. Rather than foreclose, Independence negotiated what in essence was a new agreement for the payment of the note under which Kenyon became the principal obligor by operation of law, as discussed above. At least one reported case holds that such an agreement constitutes an extension releasing the mortgagor from liability on the note. *Hoffman v. Piccone,* 137 Misc. 537, 242 N.Y.S. 707 (1930). Further, Independence relinquished its option to accept or refuse prepayment of the loan,

agreeing unequivocally to accept prepayment in the event of a sale or development by Kenyon. One North Carolina authority indicates that a novation is sufficient to discharge the mortgagor's personal obligation. Hetrick, *supra*, Section 267.

Kenyon attempts to counter the application of this general rule by arguing that Max Gardner's consent to the extenstion can be inferred from the following language in the Hancock deed of trust: "If the Grantor [Hancock or successor] shall pay the Note secured hereby, in accordance with its terms together with interest thereon *and any renewals or extensions* in whole or in part, . . . then this conveyance shall be null and void. . . ." In support of their argument, Kenyon cites *Wachovia Realty Investment v. Housing, Inc.*, 292 N.C. 93, 232 S.E. 2d 667 (1977). We disagree with Kenyon and find the authority it cites inapposite. The maker of the note in *Wachovia* consented to be bound by the note until it was paid "notwithstanding any extensions." The Supreme Court accordingly held that an extension of time would not release the maker from principal liability on the note. However, the language of the Hancock deed of trust that is relied on by Kenyon does not evidence such consent. Rather, it states a condition in the contract to reconvey, upon the performance of which the mortgagor will be entitled to cancellation of the deed of trust. Hetrick, *supra*, Section 257(b). Kenyon further contends that there is no evidence of the value of the property transferred against which the extent of Gardner's release may be calculated. While we agree with Kenyon, we point out that this deficiency in no way diminishes the effectiveness of the agreement to shift personal liability on the note—Kenyon is still liable.

The lack of evidence of value does raise a question of fact that would ordinarily require further proceedings for proper determination. However, Independence's subsequent release in bankruptcy of Gardner's obligation on the note effectively moots that issue.

### e.

The behavior of the parties after the execution of the agreement only reinforces the conclusion that they intended Kenyon to assume personal liability on the mortgage debt. Kenyon made two payments, totalling more than $20,000, according to the agreement and paid $15,000 for Independence's release of its lien on a

part of the land. This conduct is clear evidence that the parties thought that a valid, enforceable agreement existed between them.

## IV

As discussed above, the agreement operated to release Gardner from liability on the note to the extent of the value of the interest conveyed to Kenyon. With this in mind, and recalling that a mortgagee's consent to an assumption agreement releases the mortgagor from any personal liability, the provision in the agreement that it did not constitute a formal assumption merely insures that Independence would be able to recover fully in case of a default on the Hancock note by being able to sue Gardner for any deficiency remaining after a foreclosure sale on the land.

[4] This was the relationship of the parties as of the date of institution of bankruptcy proceedings by Gardner. In the agreement resulting from those proceedings, Independence released Gardner to the extent of any obligation remaining on the Hancock note. The effect of this was to release Gardner from any obligations that remained on the note after the agreement by Kenyon to pay it. Kenyon, in its Bankruptcy Settlement Agreement with Gardner, agreed to assume any liability that the Gardners "may have had or now have" on the Hancock note. This language constitutes a formal assumption by Kenyon of the Hancock note, which is consistent with the effective result of Independence's release.

Returning to the principles set out earlier, the formal assumption by Kenyon of the Hancock indebtedness with the consent of Independence makes Kenyon primarily liable for the full amount and entitles BB&T, as successor to Independence, upon default either to sue on the note or to foreclose on the deed of trust. *Beaver v. Ledbetter, supra.*

## V

The relief sought by BB&T was a court order for the foreclosure of the Hancock deed of trust. The issues raised by a motion for summary judgment are (1) whether, on the basis of the pleadings, affidavits and other documents submitted in support of and in opposition to the motion, the moving party has established that there is no issue of material fact and (2) whether he is en-

titled to the requested relief as a matter of law. *Loy v. Lorm Corp.*, 52 N.C. App. 428, 278 S.E. 2d 897 (1981); *Cameron Brown Capital Corp. v. Spencer*, 31 N.C. App. 499, 229 S.E. 2d 711 (1976), *rev. denied*, 291 N.C. 710, 232 S.E. 2d 203 (1977). If the movant's burden is carried, the burden is on the opposing party to show that there is a question of material fact that can only be resolved by proceeding to trial. *Carson v. Sutton*, 35 N.C. App. 720, 242 S.E. 2d 535 (1978). On the basis of the documents submitted by both parties, we do not perceive an issue of material fact. On the basis of the applicable law, we think that BB&T was entitled to the relief requested in its motion and that the trial court should have ordered foreclosure on the Hancock deed of trust. Accordingly, the order of the trial court is reversed and the case remanded with instructions that summary judgment be entered in favor of BB&T.

Reversed and remanded.

Judges BECTON and PHILLIPS concur.