Miller & Long, Inc. v. Intracoastal Living, LLC, 2011 NCBC 17.

STATE OF NORTH CAROLINA

COUNTY OF BRUNSWICK

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
07 CVS 1760

MILLER & LONG, INC., )
               Plaintiff )
                )
        v. )
                )
INTRACOASTAL LIVING, LLC, SUPERIOR )
CONSTRUCTION CORPORATION, )
WESTERN SURETY, ET AL., )
            Defendants )

**OPINION AND ORDER ON
PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT**

THIS CAUSE, designated an exceptional case by Order of the Chief Justice of the North Carolina Supreme Court, pursuant to Rule 2.1 of the General Rules of Practice for the Superior and District Courts, and assigned to the undersigned Chief Special Superior Court Judge for Complex Business Cases, now comes before the court upon Plaintiff Miller & Long Co., Inc.'s ("Miller & Long") Amended Motion for Partial Summary Judgment (the "Motion"), pursuant to Rule 56, North Carolina Rules of Civil Procedure ("Rule(s)"); and

THE COURT, after considering the arguments, briefs, affidavits, other submissions of counsel and appropriate matters of record, as discussed *infra*, CONCLUDES that the Plaintiff's Motion should be GRANTED in part and DENIED in part, as reflected herein.

*Jordan Price Wall Gray Jones & Carlton by Brian S. Edlin, Esq. for Plaintiff Miller & Long Co. Inc.*

Jolly, Judge.

## FACTUAL AND PROCEDURAL BACKGROUND

[1]     Unless otherwise indicated herein, the material facts reflected in paragraphs 2 through 16 of this Opinion and Order exist, are undisputed[1] and are pertinent to the issues raised by the Motion.

[2]     Plaintiff filed its verified Complaint on August 13, 2007, and its Amended Complaint in this civil action on October 27, 2008.  In its Amended Complaint, Plaintiff alleges seven claims for relief ("Claim(s)"): First Claim for Relief (breach of contract against Superior for Buildings Two and Three); Second Claim for Relief (breach of contract against Superior for Building Four); Third Claim for Relief (breach of contract against Superior for Building Five); Fourth Claim for Relief (quantum meruit against Superior, Intracoastal and Preserve Holdings); Fifth Claim for Relief (constructive trust/equitable lien on Buildings Four and Five); Sixth Claim for Relief (enforcement of lien on funds against Superior and Intracoastal) and Seventh Claim for Relief (attorney fees against Intracoastal and Superior).

[3]     Plaintiff filed the Motion against Defendants Superior Construction Corporation ("Superior") and Western Surety Company ("Western") on April 5, 2008.

[4]     On May 21, 2008, Plaintiff withdrew the Motion as to Western because the parties reached a settlement of all Claims against Western.  Pursuant to the terms of the settlement, Western made payment in full with respect to Plaintiff's principal Claims on Buildings 2 and 3.[2]   On July 14, 2008, Plaintiff dismissed Western from this action

---

[1]It is not proper for a trial court to make findings of fact in determining a motion for summary judgment under Rule 56.  However, it is appropriate for a Rule 56 Order to reflect material facts that the court concludes exist and are not disputed, and which support the legal conclusions with regard to summary judgment. *Hyde Ins. Agency v. Dixie Leasing*, 26 N.C. App. 138 (1975).

[2] Pl. Reply Br. Mot. Summ. J. 1.  Plaintiff preserves its Claims for interest and attorney fees against Superior with respect to Buildings Two and Three.

pursuant to Rule 41. Therefore, the court will consider Plaintiff's Motion only as to Superior.

[5] Plaintiff, a Delaware corporation authorized to do business in North Carolina, is a full-service, turn-key subcontractor that supplies all reinforced concrete elements necessary for a total structural frame for large construction projects.

[6] Defendant Intracoastal Living, LLC ("Intracoastal") is a limited liability company organized and existing under the laws of the State of North Carolina with its principal office and place of business located in Southport, Brunswick County, North Carolina. At all relevant times, Intracoastal was, and is, the owner of real property known as The Preserve at Oak Island, located on Old Bridge Road, Oak Island, Brunswick County (the "Project"). The Project was being developed by Intracoastal as a multiple-building residential condominium community.

[7] Defendant Superior, a corporation organized and existing under the laws of the State of North Carolina, is a general contractor.

[8] On January 21, 2005, Superior entered into a written contract with Intracoastal for the construction of Buildings Two and Three and a Clubhouse for the Project.[3] Superior subsequently entered into contracts with Intracoastal for the construction of Buildings Four and Five of the Project.[4]

---

[3] *See* 2d Am. Compl. ¶ 44, *Superior Constr. Corp. v. Intracoastal Living, LLC,* Brunswick Co., 07 CVS 2806.
[4] *Id.* ¶ 61.

## Buildings Two and Three

[9] On or before April 11, 2005,[5] Superior, as general contractor, entered into a written subcontract agreement with Plaintiff, as subcontractor, pursuant to which Plaintiff was to furnish and install "all concrete, post-tensioning materials and accessories, reinforcing steel and accessories, and the placement of all other sub trade embeds required to construct these concrete frame buildings from the stone columns (by others) up through and including the roofs" in connection with the construction of Buildings Two and Three of the Project. This subcontract (the "Buildings Two and Three Subcontract")[6] is identified with the number 04MBD006-S01 and is in the amount of $5,825,000.[7] It is signed by both Plaintiff and Superior.[8]

## Building Four

[10] On October 14, 2005, Superior sent Plaintiff a Letter of Intent regarding a subcontract for Building Four (the "Building Four Subcontract") in the amount of $1,860,000 for concrete foundations, columns, slab and elevated post-tensioned decks.[9] In compliance with this letter, Plaintiff obtained a certificate of insurance, dated October 18, 2005, which identifies Plaintiff as the insured party, Superior as an additional insured party, the covered operation as Building Four and Superior as the certificate holder.[10] Plaintiff also secured payment and performance bonds, both dated

---

[5] *See* Compl. ¶ 16 and Am. Compl. ¶ 46.
[6] Clardy Aff. Ex. A.
[7] *Id.*
[8] *Id.*
[9] May 22, 2008 Dickman Aff. Ex. A.
[10] *Id.* Ex. B.

October 13, 2005, and in the amount of $1,860,000 for Building Four.[11]  On these

bonds, Plaintiff is named as the contractor, and Superior is named as the owner.[12]

[11]    A document purporting to be the Building Four Subcontract, dated October

13, 2005,[13] was generated by Superior, but was never signed by the parties.[14]  The

subcontract number associated with this agreement is 05 MBD014-S01.[15]

[12]    Plaintiff submitted to Application for Payment forms to Superior that reflect

the original contract sum of $1,860,000 and which reference Building Four.[16]  These

forms state:

> The undersigned Contractor certifies that to the best of the Contractor's knowledge, information and belief the Work covered by this Application for Payment has been completed in accordance with the Contract Documents, that all amounts have been paid by the Contractor for Work for which previous Certificates for Payment were issued and payments received from the Owner, and that current payment shown herein is now due.

The Application for Payment forms are signed by Plaintiff.

## Building Five

[13]    Plaintiff sent Superior a bid proposal for Building Five, dated April 20,

2006,[17] and a request for a letter of intent, dated May 9, 2006.[18]  The bid proposal

included a bid amount of $3,503,000 and expressly "assumes that the Inclusions,

---

[11] *Id.* Exs. C, D, respectively.

[12] *Id.*

[13] *Id.* Ex. F. The court notes the cover page of Ex. F describes the project as "7th Avenue South Condominiums, Bali Bay," with a contracted amount of $587,000 and a subcontract number of 05MBD005-S01.  Further internal pages, however, describe the project as one for Building Four, a contracted amount of $1,860,000 and a subcontract number of 05 MBD014-S01.  The court concludes the title page affixed to Ex. F was erroneously included in the exhibit.

[14] *Id.  See also* Compl. ¶ 25.

[15] Dickman Aff. Ex. F, sub-exhibit A.

[16] *Id.* Ex. E.

[17] July 2, 2008 Dickman Aff. Ex. J.

[18] *Id.* Ex. K.

Exclusions and Qualifications noted on the Bid Proposals for Buildings 2 and 3 . . . are applicable to [Plaintiff's] scope of work unless noted otherwise within this proposal."[19] An attachment to Plaintiff's request for a letter of intent also indicates a total contract amount of $3,503,000.[20] Superior replied with at least two letters of intent, dated May 11 and May 23, 2006, respectively, advising Plaintiff of Superior's intent to issue Plaintiff a subcontract in the amount of $3,503,000 for concrete framing and foundations for Building Five.[21] Superior instructed Plaintiff to consider these letters of intent as formal "Notice[s] to Proceed."[22] Notwithstanding these documents (collectively, the "Building Five Agreement"), there is no written, signed agreement purporting to be a contract between Plaintiff and Superior for work on Building Five.

[14] Plaintiff submitted to Superior at least eight Application for Payment forms referencing Building Five and reflecting the original contract sum of $3,503,000.[23] Like the forms for Building Four, these forms are signed by Plaintiff and include certification language that explicitly references "the Contract Documents." [24] Handwritten notes on the forms suggest numbers associated with the project. Five of the forms include a notation of 07MBD020; another five include a notation of 03-101, and another five include a notation of S-01.[25] Statements provided by Plaintiff for costs associated with

---

[19] *Id.* Ex. J.

[20] *Id.* Ex. K ("Schedule of Values"). Defendant argues that Miller & Long submitted this Schedule of Values in accordance with § 16.2 of Superior's standard written subcontract. *See* Br. Supp. Mot. Stay Comp. Arb. Section II (E).

[21] July 2, 2008 Dickman Aff. Ex. L.

[22] *Id.*

[23] *See*, e.g., *Id.* Ex. M. Superior mentions that Miller & Long submitted these applications on standard AIA forms, just as it had with respect to the Subcontracts and as required by Superior's Subcontracts. *See* Br. Supp. Mot. Stay Comp. Arb. Section II (E).

[24] July 2, 2008 Dickman Aff. Ex. M.

[25] *Id.* The court notes that an "S-01" identification marker was also used to reference the Building Four Subcontract.

Building Five include an identification number of 1-6530.[26] The numbers 07MBD020-S01 and 1-6530 are typed and handwritten, respectively, on a copy and receipt of a check written by Superior and made out to Plaintiff in the amount of $1,551,615.30 for work completed on Building Five, the total billed in the first four applications.[27] A receipt of another check written by Superior and made out to Plaintiff in the amount of $167,122.80 also includes the identification numbers 07MBD020-S01 and 1-6530.[28]

[15] At times material, Plaintiff undertook to perform pursuant to the Subcontracts and the Building Five Agreement. During the course of the work, disputes developed between Superior and Plaintiff arising out of their respective contractual obligations.

## The Unpaid Accounts

[16] At the time this action was filed, the account balances due from Superior to Plaintiff were (a) $510,263.90 on the Buildings Two and Three Subcontract, (b) $199,584 on the alleged Building Four Subcontract and (c) $1,469,159 on the alleged Building Five Subcontract.

## PLAINTIFF'S MOTION

[17] Under Rule 56(c), summary judgment is to be rendered "forthwith" if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. When the forecast of evidence demonstrates that the plaintiff cannot satisfy an essential element of a claim or

---

[26] *Id.*
[27] *Id.*
[28] *Id.* Ex. M. This amount is very close (within $2) to the amount due per Miller & Long's seventh application for payment.

overcome an affirmative defense established by the defendant, summary judgment should be granted. *Grayson v. High Point Dev. Ltd. P'ship*, 175 N.C. App. 786, 788 (2006).

[18]     The court will examine the Motion in the context of each of Plaintiff's respective Claims.

<u>First Claim – Breach of Contract, Buildings Two and Three</u>

[19]     Since Plaintiff and Western have reached a settlement in which Western made payment in full with respect to Plaintiff's principal claims on Buildings Two and Three, Plaintiff seeks summary judgment only as to Superior on its Claim for interest (under its First Claim) and attorney fees (under its First and Seventh Claims) for Buildings Two and Three.

[20]     Plaintiff contends that Mike Dickman ("Dickman"), the Project Manager for Superior, certified to Intracoastal that Plaintiff's work on Buildings Two and Three was 100% complete on or about June 1, 2007.[29]  Plaintiff further contends that the architect for the Project certified to Intracoastal that Plaintiff's work was 100% complete.[30] Despite the certifications by Dickman and the architect, Plaintiff complains that Superior improperly refused to pay Plaintiff the remaining balance due under the Buildings Two and Three Subcontract; and therefore, Plaintiff is entitled to interest and attorney fees for its First Claim under Article 15.4 of the Buildings Two and Three Subcontract as well as pursuant to N.C. Gen. Stat. § 44A-35 (herein, further references to the General Statutes will be to "G.S.").

---

[29] Pl. Reply Br. Mot. Summ. J. 4.
[30] *Id.*

[21]    Plaintiff last completed work on Buildings Two and Three on August 31, 2006.  Thereafter, on May 28, 2008, Western paid the balance due on the Buildings Two and Three Subcontract in the amount of $510,263.90.

[22]    Superior argues that Plaintiff is not entitled to attorney fees on its Claim for Buildings Two and Three because there exist genuine issues of material fact as to whether Plaintiff properly completed its work on these buildings.  Among other things, Superior presents the Affidavit of Carlton S. Clardy, Jr. ("Clardy")[31] in support of its contentions.  However, Plaintiff has objected to the Clardy Affidavit and contends it should be stricken because it fails to set forth material facts that would be admissible in evidence in this matter, as required by Rule 56(e).

[23]    The court CONCLUDES that the substance of the Clardy Affidavit does not meet the requirements of Rule 56(e), and it hereby is STRICKEN.  Its substance has not been considered by the court in support of or opposition to the Motion.[32]

[24]    If Plaintiff's work on Buildings Two and Three was not complete or was defective, Dickman would not have certified that the work was 100% complete in June 2007 nor would the architect for the project have certified that Plaintiff's work was 100% complete.  Had Superior wanted to challenge Plaintiff's work, they should have done it when Plaintiff submitted its application and certification to Intracoastal for payment.  Progress payments based upon an architect's approval of submitted requisitions are evidence of the quality of a contractor's work.  *Sweeney Co. of Md. V. Engineers-Constructors Inc.*, 823 F.2d 805, 808 (4th Cir. 1987).

---

[31] Filed on May 22, 2008.
[32] However, the court has considered Exhibit A to the Clardy affidavit, which is undisputed.

[25]    G.S. 22C-2 provides that "[p]erformance by a subcontractor in accordance with the provisions of its contract shall entitle it to payment from the party with whom it contracts."  Superior cannot change its position at this late date, and has waived any challenges to Plaintiff's work on Buildings Two and Three.

[26]    The court CONCLUDES that there exist no genuine issues of material fact on the question of whether Superior breached the Buildings Two and Three Subcontract by failing to pay Plaintiff the balance due under the contract.  Accordingly, as to Buildings Two and Three, Plaintiff's Motion should be GRANTED with regard to interest and attorney fees as to said breach.

[27]    Pursuant to the provisions of Article 15.4 of the Buildings Two and Three Subcontract and the applicable provisions of G.S. Chapters 24 and 44A as to Buildings Two and Three Plaintiff is entitled to recover interest from Superior in the amount of $30,308.28,[33] plus attorney fees in an amount to be determined by the court.[34]

Second Claim – Breach of Contract, Building Four

[28]    Plaintiff contends that Superior's failure to pay the balance of $199,584 due under the Building 4 Subcontract constitutes a breach of that contract.  Plaintiff argues that it completed work on Building Four on October 20, 2006.  As with Buildings Two and Three, Plaintiff has submitted evidence showing that Dickman and the architect for the Project certified to Intracoastal that Plaintiff's work was 100% complete.[35]

---

[33] Calculated at the legal rate of 8% on $510,263.90 from August 31, 2006 to May 28, 2008, the date of payment by Western to Plaintiff of the principal account balance.
[34] This will be awarded in the context of Plaintiff's Seventh Claim, *infra*.
[35] *See* Burns Aff.

[29]     Superior acknowledges that Plaintiff "clearly performed pursuant to the terms and provisions of the Subcontract forwarded by Superior for Building 4," but argues Plaintiff never returned a signed copy of the Building Four Subcontract to Superior.[36]  Superior also contends that to date, neither it nor Intracoastal has received a final letter of acceptance from the engineer that would deem Plaintiff's work complete on Building Four.

[30]     The course of conduct between Plaintiff and Superior establishes that they intended that a contract existed between them with regard to Building Four.[37]  The lack of a signed formal contract is not fatal to Plaintiff's Building Four Claim.

[31]     G.S. 22C-4 provides that a contractor, at the time of application and certification to the owner, may withhold such application and certification to the owner for payment to the subcontractor for, among other things, defective construction not remedied or disputed work.  If Plaintiff's work on Building Four was not complete or was defective, Superior should have informed Intracoastal of that when Plaintiff submitted its application and certification to Intracoastal for payment.  The certifications provided by Dickman and the architect in June 2007 contradict Dickman's later-submitted affidavit, which challenges the quality and completeness of Plaintiff's work.  However, if the work in fact was not complete, as Superior's Project Manager Dickman should not have certified that it was.  Superior has waived any such challenges and cannot change its position at this late date.

[32]     The court CONCLUDES that there exist no genuine issues of material fact on the question of whether (a) there existed a contract between Plaintiff and Superior

---

[36] Superior's Mem. Opp. Pl. Partial Mot. Summ, J. 3.
[37] Am. Compl. ¶¶ 57-60.

with regard to Building Four and (b) Superior breached the Building Four Subcontract by failing to pay Plaintiff the balance due as to Building Four. Therefore, Plaintiff is entitled to summary judgment in its favor with regard to its Second Claim. Accordingly, Plaintiff's Motion should be GRANTED as to the Building Four Subcontract.

<u>Third Claim – Breach of Contract, Building Five</u>

[33]   Plaintiff next contends that Superior's failure to pay the balance of $1,469,159.00 due under the Building Five Agreement and the continued failure to make payment constitutes a breach of contract. Plaintiff argues that it completed its work for Building Five on May 11, 2007,[38] but Superior has refused to pay for all labor and materials provided by Plaintiff to date.

[34]   There is no written contract pursuant to which Plaintiff performed its work on Building Five. However, the bid, letters of intent, work performed and bills submitted demonstrate the existence of a contract between Plaintiff and Superior. *See*, *e.g.*, *Indus. & Textile Piping, Inc. v. Indus. Rigging Servs., Inc.*, 69 N.C. App. 511, 514 (1984) ("[t]he parties' failure to reach agreement on the written subcontract does not preclude the conclusion that an express contract existed."). It is also true that the parties' intent, where not clear from their contract, may be inferred from the parties' actions. *Branch Banking & Trust Co. v. Kenyon Inv. Corp.*, 76 N.C. App. 1, 9 (1985). Accordingly, the court CONCLUDES that a valid agreement exists between Plaintiff and Superior with respect to Building Five.

[35]   Superior disputes the amount claimed by Plaintiffs, arguing that, unlike other buildings in the Project, Plaintiff's work on Building Five has not been approved or

---

[38] According to the Affidavit of Joe Burns, Miller & Long's Vice President, Plaintiff ceased work on Building 5 once Superior stopped making payments to Plaintiff. The only work left to be done for Building 5 was the slab on grade, for which the scheduled value was $343,425. Burns Aff. ¶¶ 12, 14.

accepted by Intracoastal. Superior does admit however that Plaintiff began performance on Building Five, but contends Plaintiff failed to complete its work on Building Five.[39]

[36]    The court CONCLUDES that there exist genuine issues of material fact as to whether Superior breached the Building Five Agreement by failing to pay Plaintiff the balance due. Accordingly, Plaintiff's Motion should be DENIED with regard to its Third Claim.

Seventh Claim – Attorney Fees

[37]    Plaintiff next argues that it is entitled to attorney fees under G.S. 44A-35 because this action is both a lien and payment bond action and Plaintiff will be the prevailing party since it will recover more than 50% of its total claim.[40]

[38]    Superior responds that Plaintiff is not the prevailing party within the meaning of G.S. 44A-35 since genuine issues of material fact exist as to its Claims, and that even if Plaintiff is the prevailing party, the court is not required to award attorney fees.

[39]    G.S. 44A-35 provides that "[i]n any suit brought or defended under the provisions of Article 2 or Article 3 of this Chapter, the presiding judge may allow a reasonable attorney fee to the attorney representing the prevailing party." The prevailing party is "a party plaintiff or third party plaintiff who obtains a judgment of at least fifty percent (50%) of the monetary amount sought in a claim . . . ." G.S. 44A-35. The decision to award attorney fees under G.S. 44A-35 is solely within the trial court's

---

[39] Superior relies upon the Clardy affidavit, which has been stricken.
[40] Pl. Mem. Supp. Partial Mot. Summ. J. 114.

discretion. *See e.g. Brooks Millwork Co. v. Levine*, No. COA09-781, 2010 N.C. App. LEXIS 959, at *8 (N.C. App. June 15, 2010).

[40]    The court CONCLUDES that because Plaintiff is entitled to recover under the Subcontracts relative to Buildings Two, Three and Four, Plaintiff is the prevailing party under G.S. 44A-35, and therefore, is entitled to reasonable attorney fees in an amount to be determined by the court.

NOW THEREFORE, based upon the foregoing FINDINGS and CONCLUSIONS, it is ORDERED that:

[41]    Plaintiff's Amended Motion for Partial Summary Judgment is GRANTED as to Plaintiff's Second Claim; and with regard to said Second Claim the Plaintiff shall have and recover JUDGMENT against Defendant Superior Construction Corporation in the amount of $199,584, plus interest as provided by law.

[42]    Plaintiff's Amended Motion for Partial Summary Judgment is GRANTED as to Plaintiff's Seventh Claim; and Plaintiff is entitled to recover reasonable attorney fees and costs with regard to its Claims relative to Buildings Two, Three and Four, in an amount to be determined by the court.

[43]    Plaintiff's Amended Motion for Partial Summary Judgment is DENIED as to Plaintiff's Third Claim.

[44]    On or before Monday, July 11, 2011, Plaintiff shall submit to the court an affidavit reflecting its attorney fees and costs incurred in prosecution of its First and Second Claims in this matter.

[45]    On Tuesday, July 12, 2011, at 12:00 noon, in the North Carolina Business Court at 225 Hillsborough Street, Suite 303, Raleigh, North Carolina, the court will hold

a status conference and hearing in this matter for the purpose of considering and resolving any remaining issues existing between Plaintiff Miller & Long and Defendant Superior.

This the 21st day of June, 2011.